[No. 26291. Department One. December 3, 1936.]

STELLA M. McFARLAND, *Respondent,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant.*[1]

[1]Reported in 62 P. (2d) 714.

358

*The Attorney General* and *J. A. Kavaney, Assistant,* for appellant.

*W. H. Sibbald,* for respondent.

STEINERT, J.—This is an appeal from a judgment of the superior court granting a widow's pension, in a proceeding arising out of the workmen's compensation act and tried before the court without a jury.

On April 2, 1930, Charles Wesley McFarland, then sixty-six years of age, was engaged in extrahazardous work and, during the course of his employment on that day, sustained a fracture of the right femur. His claim for compensation was recognized, and provision for his time loss and medical aid was made, by the department of labor and industries. The claim was closed by order of the supervisor of the department on August 28, 1931, with an allowance of time loss to August 26, 1931, and twenty degrees permanent partial disability.

From that order and award, the injured workman appealed to the joint board of the department, upon the ground that he was suffering a total disability, either temporary or permanent. After a hearing, the joint board reversed the order of the supervisor and made an additional allowance for time loss to April 5, 1932, but no additional allowance for either total or partial disability. Thereupon, the claim was again closed.

On June 9, 1932, the workman, claiming that, by reason of aggravation of the injury sustained, he was totally and permanently disabled, petitioned the joint board for a rehearing. The board reheard the matter and then entered an order sustaining the supervisor's second closing of the claim. An appeal was taken to the superior court, where, after a hearing, a judgment was entered July 24, 1933, awarding the workman an allowance of eight hundred forty dollars for twenty-eight additional degrees of permanent partial disability. No appeal was taken from that judgment, nor was any further claim ever made to the department by the workman.

On February 22, 1934, Charles W. McFarland, the workman, committed suicide by hanging. Thereafter, his widow, the respondent herein, filed an application for a widow's pension. The application was denied by the supervisor, and subsequently by the joint board, on the ground that death was not the result of the injury alleged, or of trauma. An appeal was taken by the widow to the superior court, where, after a hearing, the order of the department was reversed and the widow was allowed a pension. The present appeal is from that judgment of the court.

Appellant's first five assignments of error relate to certain findings of fact and the conclusion of law drawn therefrom by the court. The question raised by

the findings and conclusion is whether the workman came to his death as the result of deliberate intention to commit suicide. That question is a vital one, because Rem. Rev. Stat., § 7680 [P. C. § 3473], provides that, if injury or death results to a workman from his deliberate intention to produce such injury or death, neither the workman nor his widow, child, or dependent shall receive any payment whatsoever out of the accident fund.

As disclosed by the record, the case was tried by the court solely upon the testimony taken before the joint board. The statement of facts reveals that the only testimony taken before the board was that of the widow, her daughter, who was the step-daughter of the deceased, a friend of the family, and a physician. No testimony was taken at the instance, or on behalf, of the appellant.

After considering the testimony, the court rendered a memorandum opinion and thereafter made its findings of fact, which, in addition to what has already been stated herein, set forth the following, as facts:

From the time of his injury until his death, Mr. McFarland was unable to do any work other than light chores about the house. His disability became aggravated by reason of the development of phlebitis, which is an inflammation of the veins and is very painful. The pain and distress grew to such an extent that, during the *last few months of his life,* his mind became affected, and he was subject to insane fits of distraction and violence, although previously he had been a peaceful individual, having affection for his wife and also for his step-children, who were living with him. His periods of insane distraction would come on suddenly, and on one or two such occasions he had threatened to kill himself, but each time was pacified by his wife.

On February 24, 1934, Mr. McFarland suddenly became incensed because of some slight delay in the noon-day meal. Without any apparent provocation, he seized his step-daughter and violently assaulted her, tearing off her dress and vehemently cursing everyone present, including himself. His appearance was that of a wild and insane person. The respondent intervened and, after rescuing her daughter, mildly remonstrated with her husband about his conduct. Immediately thereupon, Mr. McFarland ran from the house to the barn in the rear and there hanged himself. A few minutes later, his wife went to the barn and found her husband hanging by a rope. He was then dead.

The court further found that the death of Mr. McFarland was not inflicted with any deliberation or any deliberate intent on his part, but that the act was committed in a moment of insane impulse; that his mind had become deranged because of the pain, suffering, and worry caused by the injury, resulting in an acute dementia or a maniacal derangement; and that he was not, at the time, capable of forming a deliberate intent on any subject whatever.

The evidence adduced by respondent was sufficient to make a *prima facie* case and, in the absence of any evidence to the contrary, justified the court in making the findings and drawing the conclusion that it did.

If a workman, while engaged in extrahazardous employment, sustains an injury, and the injury causes such pain and suffering as proximately results in insanity or in such mental condition as to render the workman subject to periods of delirium, and the workman during a period of such delirium takes his own life, the death may be attributed to the injury and, if so, is compensable under the workmen's compensation

act. *Gatterdam v. Department of Labor & Industries,* 185 Wash. 628, 56 P. (2d) 693.

Appellant's next assignment of error is based upon the refusal of the court to strike the testimony given by the respondent with reference to family occurrences and the declarations of the deceased. Appellant contends that respondent's testimony falls within the inhibition of the proviso contained in Rem. Rev. Stat., § 1211 [P. C. § 7722], which, so far as it is pertinent here, reads as follows:

" . . . Provided, however, that in an action or proceeding where the adverse party sues or defends as . . . deriving right or title by, through or from any deceased person, or as the guardian or conservator of the estate of any insane person . . . then a party in interest or to the record, shall not be admitted to testify in his own behalf as to any transaction had by him with, or any statement made to him, or in his presence, by any such deceased or insane person . . . "

Assuming, for the sake of argument, that, in an action or proceeding of this kind, the claimant comes within the designation of an adverse party or as deriving right or title through a deceased person, or as guardian or conservator of the estate of an insane person, still the statute does not apply. The object of that statute is to prevent persons whose interests are adverse to the estates of deceased or insane persons from testifying to transactions had with, or statements made by, such deceased or insane persons. But the statute does not seek to prevent, nor does it prohibit, an interested witness from testifying on behalf, or in favor, of the estate of a deceased or insane person. *O'Connor v. Slatter,* 46 Wash. 308, 89 Pac. 885; *In re Cunningham's Estate,* 94 Wash. 191, 161 Pac. 1193; *Brucker v. De Hart,* 106 Wash. 386, 180 Pac. 397. The statutory rule was formulated in recognition of the

fact that, when the lips of the one who is said to have made the statement, or with whom the transaction is alleged to have been had, are sealed in death, it becomes difficult, and often impossible, to rebut such adverse testimony. Hence, the testimony of interested witnesses in such cases is excluded. Further than that, the statute does not go.

However, Rem. Rev. Stat., § 1211 [P. C. § 7722] does not change the general rule of law that self-serving declarations made out of the presence of the other party are not admissible. *O'Connor v. Slatter,* 46 Wash 308, 89 Pac. 885. But this general rule does not apply here, because the declarations of the deceased, in the present instance, were not offered for the purpose of establishing the truth of the facts thereby declared, but merely as evidence of the declarant's insanity, regardless of whether the declarations were true or not. The statements were simply verbal acts to be considered as a part of the declarant's general conduct, all of which was offered to show that the workman was insane at the time of his death. The evidence was properly admitted.

Upon its remaining assignment of error, appellant contends that respondent is not entitled to a widow's pension, because the workman did not die during a period of permanent total disability. The phrase "permanent total disability" is defined by Rem. Rev. Stat., § 7679 [P. C. § 3472] to mean the loss of both legs or arms, or one leg and one arm, total loss of eyesight, paralysis, or other condition permanently incapacitating the workman from performing any work at a gainful occupation. In this case, the court found that, at the time of his death, the workman was totally and permanently disabled within the meaning of this section of the statute.

Rem. Rev. Stat., § 7679 [P. C. § 3472] (c), provides:

"If the injured workman die, during the period of permanent total disability, whatever the cause of death, leaving a widow, invalid widower or child under the age of sixteen years, the surviving widow or invalid widower shall receive thirty-five dollars ($35.00) per month until death or remarriage, to be increased per month for each child of the deceased under the age of sixteen years at the time any monthly payment is due, as follows: . . ."

As already stated, if injury or death be brought about by the deliberate intention of the workman, no compensation is payable for such injury or death. Rem. Rev. Stat., § 7680 [P. C. § 3473]. Any question of intention on the part of the workman in this case has been disposed of by what we have already stated herein.

Appellant's contention, under the immediate assignment, is that, since the workman's claim was finally closed, after appeal to the superior court, with an allowance of permanent partial disability only, his status became fixed thereby, and that, therefore, there was no basis for the allowance of a widow's pension. The question presented is whether the widow is entitled to show that the workman was, in fact, permanently and totally disabled during the period immediately prior to his death, or whether, on the contrary, his status continued to be that previously fixed by the department, following the order of the court.

Only two cases involving, or even remotely bearing upon, the question before us have come to our attention. *Wintermute v. Department of Labor & Industries,* 183 Wash. 169, 48 P. (2d) 627, and *Beels v. Department of Labor & Industries,* 178 Wash. 301, 34 P. (2d) 917.

In the *Wintermute* case, the workman had been allowed compensation for twenty-five degrees perma-

nent partial disability. He thereafter made application for the reopening of his claim, on the ground of aggravation of disability. From a reference to the files in that case, it appears that the workman claimed total permanent disability. A rehearing was granted the injured workman, but before the same was held the workman died. The widow filed a claim for pension on the ground that the injury sustained was the cause of death. She also made claim for compensation due the deceased, for which he had applied prior to his death. The cause was tried before a jury, which rendered a verdict for the claimant widow. Judgment on the verdict was entered directing the allowance of both the pension and the intermediate uncollected monthly payments. On appeal to this court, the judgment was affirmed.

That case, though somewhat analogous, does not quite reach the particular question here, for two reasons: (1) In that case, the workman had made a claim prior to his death, and the same was pending and undetermined at the time of his decease. In the case at bar, the claim of the workman had been acted upon and finally closed prior to his death. (2) In the *Wintermute* case, it was claimed that the death *resulted from the injury,* which would bring the matter within in Rem. Rev. Stat., § 7679 [P. C. § 3472] (a). In this case, the claim is that death occurred during the period of alleged permanent total disability, which, under Rem. Rev. Stat., § 7679 [P. C. § 3472] (c), is ground for a widow's pension regardless of the cause of death.

The most that we can draw from the *Wintermute* case, as bearing upon the question here, is the thought that, in view of the declared purpose of the workmen's compensation act, the claim of the widow for pension shall, if reasonably possible, be favorably considered.

The *Beels* case, in our opinion, comes close enough

to the case at bar to be decisive of it. In that case, a deputy sheriff, coming within the provisions of the workmen's compensation act, was injured in December, 1931, while in the course of his employment. As the result of the injury, he died January 14, 1933. The injured party at no time made any application to the department for compensation. On February 27, 1933, which was more than one year after the date of the injury, the widow made application for compensation, on the usual form prescribed for the report of accidents, but there was no formal application for the allowance of a pension. This court held that, under the particular circumstances presented in that case, the application was sufficient as a claim for pension.

Upon the question with which we are here immediately concerned, the court held that the right of the widow was a new, original right, independent of the rights of the workman under any claim that he might have had, and that her rights were in no way affected by the failure of the workman to insist upon his own rights. We said:

"Under Rem. Rev. Stat., §§ 7679 and 7686, by authority of which respondent's claim, as deceased's widow, for compensation was made, the widow could not be deemed, during her husband's life, a party in interest to any proceeding by him for enforcement of any claim for compensation. Her rights accrued the instant her husband died. Her application for compensation was filed within one year after the day upon which her rights accrued, hence the claim was timely filed. Her husband's failure to make application for compensation within one year after the day upon which the injury occurred did not beneficially or detrimentally affect her claim, which was based on a new, original right arising from his death."

Now, if the fact that the injured workman never made any claim whatever for compensation does not prejudice the right of the widow to apply for a pension,

there must be equal, if not stronger, reason for holding that the failure of the injured workman to apply for an increase of compensation, upon a claim originally allowed in part, does not bar the widow's right to apply for a pension upon the death of the workman, provided that her application be made within one year from the time that her right accrued. If her claim were otherwise a valid one, it would not, under the reasoning of the *Beels* case, be detrimentally affected by the mere fact of delay or failure on the part of the workman, in his lifetime, to establish his status as that of permanent total disability occurring after his status had been fixed as one of permanent partial disability.

Stating the matter in converse fashion, and as the facts herein present themselves, if the injured workman whose status has been fixed by the department or by the court as one of permanent partial disability is thereafter, as the result of the injury, rendered permanently and totally disabled, those facts may be established by the widow, and when so established, in conjunction with the other necessary essentials prescribed by the statute, make a case for the allowance of a widow's pension. Upon the authority of the *Beels* case, we hold that, in proceedings to obtain a widow's pension, it may be shown that the workman, at the time of his death, was, in fact, laboring under permanent total disability, as defined by the statute; and that, if such permanent total disability is the proximate result of the injury, the widow is entitled to a pension.

The judgment is affirmed.

MILLARD, C. J., MAIN, BLAKE, and GERAGHTY, JJ., concur.