Argued May 23, reargued October 2, affirmed October 23, motion
for attorney's fees October 31, allowed in part
November 20, 1957

# MIKOLICH *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

316 P. 2d 812
318 P. 2d 274

*Gerald C. Knapp,* Assistant Attorney General,

Salem, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General, and Ray H. Lafky, Assistant Attorney General, Salem.

*W. A. Franklin* argued the cause for respondent. On the brief were Anderson, Franklin, O'Brien & Hanlon, Portland.

ROSSMAN, J.

This is an appeal by the defendant, State Industrial Accident Commission, from a judgment order of the circuit court which remanded this cause to the defendant commission and directed it to

> "enter an order cancelling and setting aside its rejection order dated March 7, 1955, and allowing plaintiff's claim and granting plaintiff compensation and death benefits as provided by the Oregon Workmen's Compensation Law, as widow of Frank J. Mikolich."

As just indicated, the plaintiff is the widow of one Frank J. Mikolich. The latter was an employee of Wolfard Motor Company on February 19, 1952, when, in the course of his employment, he sustained an injury which eventually led to the institution of this proceeding. Both Mikolich and his employer were contributors to the State Industrial Accident fund. After Mikolich had filed a claim, he was awarded compensation by an order of the commission for temporary disability. Following the entry of the order the commission provided Mikolich with medical and hospital attention. He underwent surgery four times while the medical profession undertook to remedy his condition. He was in hospitals upon two additional occasions. These efforts, which extended over a period of close to three years, failed their purposes and Mikolich's

condition deteriorated. Then he was attacked by monocytic leukemia and, a month later, that is, on February 11, 1955, died. Within sixty days of the death, the plaintiff filed a claim for compensation benefits as widow, which was rejected by a commission order that gave the following reasons:

"* * * the death of said Frank J. Mikolich on February 11, 1955, was not the result of the accidental injury of February 19, 1952, for which the above numbered claim was filed."

The plaintiff filed an application for a rehearing which was denied June 13, 1955. Thereupon she instituted this proceeding. The issues were tried by a jury which returned a verdict reading as follows:

"Question I: Did the accident which the deceased, Frank J. Mikolich, suffered on or about February 19, 1952, while employed by Wolfard Motor Company, hasten and accelerate his death?

"Answer: No (Yes or No).

"Question II: Was the deceased, Frank J. Mikolich, permanently and totally disabled as the direct and proximate result of his accident of February 19, 1952, at the time of his death, on or about February 11, 1955?

"Answer: Yes. (Yes or No)."

We see from the second division of the verdict that the jury found that Mikolich was permanently totally disabled as the result of the accident which befell him on February 19, 1952. ORS 656.208 provides that if an injured workman, who is subject to the Workmen's Compensation Law, dies during the period of permanent total disability, his widow shall receive the benefits for which that section of our laws makes provision. Since the jury made the finding just mentioned, the

court, in the challenged judgment, granted the plaintiff judgment for the appropriate sums.

The defendant presents two assignments of error which assert that the trial court erred in denying the defendant's motions for an involuntary nonsuit and for the entry of judgment non obstante veredicto.

ORS 656.274(4) says:

"If a workman who has filed a claim for compensation within the time permitted by this section dies as the result of the accidental injury but before the commission has entered an order terminating compensation for temporary total disability, his widow or other beneficiaries may file a claim within 60 days after the death of the workman."

ORS 656.208 reads:

"If the injured workman dies during the period of permanent total disability, whatever the cause of death, leaving a widow who was his wife either at the time of the injury causing such disability or within two years thereafter, an invalid widower who was her husband either at the time of the injury causing such disability or within two years thereafter, or a child under the age of 18 years, the surviving widow or invalid widower shall receive $80 per month until death or remarriage, to be increased   *   *   *."

Without attempting to be exhaustive, we take note of the fact that ORS 656.274(4) is applicable only in instances in which (1) the injured workman had filed a claim; (2) the workman died "as the result of the accidental injury"; and (3) the death occurred "before the commission has entered an order terminating compensation for total temporary disability." Upon the other hand, 656.208 imposes no requirement—at least no express requirement—that the workman file

a claim, and it is not concerned with the cause of the death. It is applicable only if the injured workman died during the period of permanent total disability. It is more selective than 656.274(4) as to the dependents who may claim death benefits.

We have mentioned the fact that, at the time of Mikolich's death, the order which deemed him temporarily totally disabled was still in effect. No order had been made by the defendant commission which adjudged Mikolich permanently totally disabled. The crucial issue presented by the appeal is this: Is it essential to a claim filed by a widow for the benefits rendered available by ORS 656.208 that the commission have made an order during the workman's lifetime which adjudged him permanently totally disabled. The issue thus presented by this appeal is one of first impression in this jurisdiction.

In her complaint, the plaintiff resorted to a two-fold theory. The first was that the accident which her husband sustained "hastened and accelerated" his death. In embracing that theory, the plaintiff evidently deemed that a causal relationship existed between the accident and the death. That theory presumably was based upon ORS 656.274(4), which, as we have seen, employs these words: "before the commission has entered an order terminating compensation for temporary total disability." The second theory was that her husband's death occurred while he was "permanently and totally disabled as the result of said accident."

During the trial in the circuit court the following occurred:

"Mr. Franklin: If Your Honor please, I'd like the record to show a stipulation with counsel that

the immediate cause of death was a condition known as monocytic leukemia.

"The Court: [To Mr. Knapp] Is that correct?

"Mr. Knapp: I will so stipulate to the diagnosis as acute monocytic leukemia.

"Mr. Franklin: Let the record so show.

"The Court: It will so show."

The plaintiff's brief says:

"Since the jury found against respondent on her first theory, of course, appellant's propositions I and II are entirely immaterial in this appeal."

Appellant's proposition I reads as follows:

"Beneficiaries of injured workman to receive compensation if injury results in death."

Appellant's proposition II follows:

"For beneficiaries to receive death benefits before claim is closed workman's death must be the result of accidental injury."

The foregoing makes it clear that the plaintiff advances in this court no contention that her husband's death resulted from the injury which he sustained while in the employ of the Wolfard Motor Company. Therefore, ORS 656.274(4), quoted in a preceding paragraph, can afford the plaintiff no relief.

The plaintiff contends, however, that her claim is governed by ORS 656.208 which we have quoted, and which says:

"If the injured workman dies during the period of permanent total disability, whatever the cause of death, * * * the surviving widow * * *"

shall receive the death benefits for which that section makes provision. As we have seen, the commission had not ruled during Mikolich's lifetime that he was or was not permanently totally disabled. However, the

record contains substantial evidence indicating that before leukemia attacked him, Mikolich's status was that of permanent total disablement. The jury evidently accepted the evidence as reflecting the truth.

Before giving attention to the plaintiff's argument that Mikolich died during "the period of permanent total disability" and that, therefore, the plaintiff was entitled to the compensation benefits which ORS 656.208 renders available to the widows of injured workmen who die in that period, we shall take note of the following sections of our laws:

ORS 656.284 provides:

"(1) Any claimant aggrieved by any order, decision or award under ORS 656.282, including, but not limited to, a denial of further medical or hospital care, must, before he appeals to the courts, file with the commission an application for rehearing within 60 days from the day on which the copy of such order, decision or award was mailed to the claimant.

"(2) The application shall set forth in full detail the grounds upon which the claimant considers such order, decision or award is unjust or unlawful, and shall include every issue to be considered by the commission. The application must contain a general statement of the facts upon which the claimant relies in support thereof."

ORS 656.282, which is mentioned in the first subdivision of 656.284, above quoted, follows:

"(1) The commission may hear and determine all questions within its jurisdiction.
* * *"

The sections of our laws which govern judicial review of the rulings of the commission are ORS 656.286, 656.288 and 656.290, the first of which reads as follows:

"(1) Within 30 days after a copy of the final order of the commission upon the application for

rehearing has been mailed or within 30 days after rehearing is deemed denied under ORS 656.284, the claimant may appeal to the circuit court  *  *  *."

ORS 656.288 provides:

"(1) Upon such appeal the plaintiff may raise only such issues of law or facts as were properly included in his application for rehearing."

The commission admits that the plaintiff, after the death of her husband, timely filed a claim for widow's benefits and that it was in proper form to present her contention that her husband died while permanently totally disabled. The claim was rejected upon the ground that "the condition causing the death of said Frank J. Mikolich on February 11, 1955, was not the result of the accidental injury of February 19, 1952." Following the rejection, an application for a rehearing, as required by ORS 656.284, was filed by the plaintiff with the commission and it, too, was rejected. At that juncture this proceeding was instituted. The commission presents upon appeal the contention that a widow of a workman, who sustained an injury arising out of and in the course of his employment, is not entitled to the benefits rendered available by ORS 656.208 unless the commission, during the workman's lifetime, entered an order which adjudged him permanently totally disabled.

Although the Oregon Workmen's Compensation Law was enacted more than two score years ago, the issue now before us has never previously presented itself in this court. It has not been similarly a stranger to other courts. The English act, which was enacted in 1906, was the progenitor of American legislation. Not many years had to pass in England before the problem now before us appeared before the courts of

that land. One of the decisions by the English courts which has been much cited is *Harper v. Dick, Kerr & Co.*, 90 LJ (KB) 1313, 124 LT 438, 13 BWCC 250. Harper, the workman in that case, sustained an injury in a way that was contested. The judge [county court] who heard Harper's claim decided for the defendants on the ground that Harper had failed to establish that the accident arose out of and in the course of his employment. Harper appealed but died before the appeal was heard, and thereupon the appeal was abandoned. The widow, however, commenced fresh proceedings on her own account. Her claim, which came before the same judge who had ruled against Harper, was dismissed on the ground that the question as to the cause of the injury had been settled once and for all, and that the court, therefore, had no jurisdiction to entertain the widow's application. The widow appealed. The Master of the Rolls [Lord Sterndale], after stating the above facts, reversed, and in so doing declared:

"* * * Those are the only facts I think it is necessary for me to mention as in my view we are bound by the decision of this court in *Tucker v. Oldbury District Council* [1912] 2 K.B. 317; 5 B. W. C. C. 296, to hold that the dependents of a deceased workman have a direct separate right to institute proceedings by Sched. 1., 3 (1) (*a*). It was so decided in that case, and the same thing was said by Lord Finlay in *Manton v. Cantwell* [1920] A. C. 781; 13 B. W. C. C. 55. That being so, I do not see how you can find *res judicata* when the previous litigation was between different parties or how you can have estoppel against one of those parties because of a decision in proceedings to which they were not a party. It is like the case of two actions by strangers which involved decision of the same question. A finding in one would not make the other *res judicata* at all."

It will be observed that the decision just cited was based largely upon *Tucker v. Oldbury District Council,* 2 KB 317, 5 BWCC 296. In that case, the claim was filed by the dependents of a deceased workman who had himself presented no claim. In an effort to defeat the dependents' claim, the defendant offered a purported admission by the workman that the cause of his disability was not an injury which arose out of and in the course of his employment. The court held that, since the dependents have a direct statutory right against the employer, the proffered evidence was not admissible. The following English decisions are in harmony with the two just mentioned: *Williams v. Vauxhall Colliery Co.,* 2 KB 433, 9 WCC 120; *Howell v. Bradford & Co.,* 104 LT 433, 4 BW 203; *Manton v. Cantwell,* AC 781, 13 BWCC 55.

The decision in *Laird v. State of Vermont Highway Department,* 112 Vt 67, 20 A2d 555, is especially valuable because of its exhaustive and carefully reasoned nature. In that case, one Laird, a watchman in the employ of the defendant, was found lying in the snow near the gate of the defendant's premises. The immediate cause of his disabilities was a cerebral hemorrhage. From that time until his death, eight months later, he remained totally disabled. He filed a claim for compensation. A hearing was held upon the claim, and an award in his favor was reversed upon appeal [by the defendant] by the Supreme Court of Vermont in *Laird v. State of Vermont Highway Department,* 110 Vt 195, 3 A2d 552, upon the ground that the evidence failed to show that the injury occurred in the course of Laird's employment. Before the decision was announced Laird died. After his death his widow filed a claim for compensation. The defendant met her claim with a contention that the decision by the Ver-

mont Supreme Court was conclusive upon her and estopped her from prosecution of her claim. The commissioner ruled that the rights of dependents to benefits were derivative and stood on no higher ground than those of the workman. Compensation was denied. The widow appealed. In determining the appeal, the court stated that all of the questions presented "come down to the ultimate question of whether the decision in the Willis Laird case is a bar to the proceeding brought by the present claimant." In answering in the negative, the decision reviewed the case law upon the subject. It concluded in this way:

"* * * In our opinion the English cases and the other cases, supra, holding that the rights of dependents to compensation are not derived from those of the deceased employee but are independent and separate rights coming to them from the statute states the correct rule to be applied in construing P. L. 6513 in the situation here presented. It is true, as stated in some of the cases, that there is a common factual ground to some extent for the rights of each but they are not identical as a dependent must prove more to recover than is required of the employee. The employee's rights are based entirely on the injury and spring into being as soon as it is received. The compensation for loss resulting from such injury belongs to the employee and to him only. It is also true that there would be no occasion for a dependent to claim compensation unless the deceased employee had received a compensable injury. But the rights of the dependent to compensation do not accrue unless and until death results from such injury and such rights are then given to him by the statute not because of the injury but because of the resulting death and the financial loss to the dependent therefrom."

The basic elements of the problem before us have been many times before the Supreme Court of Washington. *McFarland v. Department of Labor and In-*

*dustries,* 188 Wash 357, 62 P2d 714—a leading case— holds that in proceedings to obtain a widow's pension it may be shown that the workman, at the time of his death, was in fact laboring under "permanent total disability." Prior to his death, McFarland [the workman in that case] was engaged in extra hazardous work and during its course sustained an injury. The defendant agency recognized his claim to compensation. It made provision for his time loss and granted him medical aid. August 28, 1931, the claim was closed by order of the supervisor. From that order and award McFarland appealed to the joint board of the department upon the ground that he was suffering a total disability, either temporary or permanent. The board reversed the order of the supervisor and made an additional allowance for time loss. Thereupon the claim was again closed. Still later, McFarland, claiming that by reason of aggravation of the injury, he was totally and permanently disabled, petitioned the joint board for a rehearing. Upon rehearing the board sustained the supervisor's second closing of the claim. Upon appeal to the superior court, McFarland was awarded an allowance of $840 for 28 additional degrees of permanent partial disability. His claim that he was permanently totally disabled was, therefore, impliedly rejected. No appeal was taken from that judgment. A few months later McFarland died. Following the death, McFarland's widow filed an application for a widow's pension under a statute similar to ORS 656.208. The supervisor, and subsequently the joint board, denied the application. Upon appeal to the superior court, the orders just mentioned were reversed and the widow was allowed a pension. The agency thereupon appealed. We now quote from the decision:

"Upon its remaining assignment of error, appel-

lant contends that respondent is not entitled to a widow's pension, because the workman did not die during a period of permanent total disability. The phrase 'permanent total disability' is defined by Rem. Rev. Stat. § 7679, to mean the loss of both legs or arms, or one leg and one arm, total loss of eyesight, paralysis, or other condition permanently incapacitating the workman from performing any work at a gainful occupation. In this case, the court found that, at the time of his death, the workman was totally and permanently disabled within the meaning of this section of the statute.

"Rem. Rev. Stat. § 7679(c) provides: 'If the injured workman die, during the period of permanent total disability, whatever the cause of death, leaving a widow, invalid widower or child under the age of sixteen years, the surviving widow or invalid widower shall receive thirty-five dollars ($35.00) per month until death or remarriage, to be increased per month for each child of the deceased under the age of sixteen years at the time any monthly payment is due, as follows.' * * *

"Appellant's contention, under the immediate assignment, is that, since the workman's claim was finally closed, after appeal to the superior court, with an allowance of permanent partial disability only, his status became fixed thereby, and that, therefore, there was no basis for the allowance of a widow's pension. The question presented is whether the widow is entitled to show that the workman was, in fact, permanently and totally disabled during the period immediately prior to his death, or whether, on the contrary, his status continued to be that previously fixed by the department, following the order of the court."

Thus the court faced the very problem which now has come to our court. In resolving that issue in favor of the widow and thereby affirming the superior court, the decision took note of one of its previous cases,

*Beels v. Department of Labor and Industries,* 178 Wash 301, 34 P2d 917, and, concerning it, said:

> "The Beels Case, in our opinion, comes close enough to the case at bar to be decisive of it. In that case, a deputy sheriff, coming within the provisions of the workmen's compensation act, was injured in December, 1931, while in the course of his employment. As the result of the injury, he died January 14, 1933. The injured party at no time made any application to the department for compensation. On February 27, 1933, which was more than one year after the date of the injury, the widow made application for compensation, on the usual form prescribed for the report of accidents, but there was no formal application for the allowance of a pension. This court held that, under the particular circumstances presented in that case, the application was sufficient as a claim for pension."

In coming to its conclusion, the court declared that, since Beels, the injured workman in the Beels case, had never made a claim for compensation, and yet his widow was permitted to apply successfully for a pension, "there must be equal, if not stronger, reason for permitting McFarland's widow for proceeding with her claim."

It added:

> "If her claim were otherwise a valid one, it would not, under the reasoning of the Beels Case be detrimentally affected by the mere fact of delay or failure on the part of the workman, in his lifetime, to establish his status as that of permanent total disability occurring after his status had been fixed as one of permanent partial disability."

The challenged judgment was affirmed and the agency order was reversed. The result was followed in *Noland v. Department of Labor and Industries,* 43 Wash2d 588, 262 P2d 765.

Since the McFarland decision relied on the Beels case, we turn to the latter for the reasons which prompted the decision. In the Beels case, the court said:

"* * * The widow could not be deemed, during the husband's life, a party in interest to any proceeding by him for enforcement of any claim for compensation. Her rights accrued the instant her husband died. Her application for compensation was filed within one year after the day upon which her rights accrued, hence the claim was timely filed. Her husband's failure to make application for compensation within one year after the day upon which the injury occurred did not beneficially or detrimentally affect her claim, which was based on a new, original right arising from his death."

An examination of the many Washington decisions indicates that the court has consistently adhered to the Beels decision.

In *Ek v. Department of Labor and Industries*, 181 Wash 91, 41 P2d 1097, the court held that the widow was barred by the fact that the rejection of the claim filed by the workman was a final judgment which was binding on the then claimant, Charles Ek. The court cited no authorities except the Beels case and distinguished it on the ground that in that case there was no judgment to bar further action. It will be remembered that in the subsequent McFarland case the court explicitly mentioned that the decedent husband had become permanently totally disabled subsequent to the decision upon his status.

In *Purdy and Whitfield v. Department of Labor and Industries*, 12 Wash2d 131, 120 P2d 858, the competency of some evidence which was offered by the claimants depended upon whether or not they derived

right or title by, through or from the deceased. We now quote:

> "* * * It has also been definitely determined by this court that claims for compensation asserted by the beneficiaries or dependents mentioned in the Workmen's Compensation Act are distinct from the claim of the injured workman himself; that claims of such beneficiaries *arise* only after the death of the workman; and that they are based on *a new and original right* arising after such death."

Then the court limited the Ek decision to the proposition that

> "an adjudication as to the existence or absence of a fact which is essential to the bringing of a claim for injury within the Workmen's Compensation Act binds not only the workman himself but also those who seek compensation as his beneficiaries or dependents."

Any thought that the Ek case was limited to its particular problem was dispelled by the case of *Barlia v. Department of Labor and Industries,* 23 Wash2d 126, 160 P2d 503, in which the widow was denied right to the greater benefits provided by a statute enacted subsequently to her husband's injury but prior to his death. The court said it was following its usual rule that a statute is presumed to operate prospectively. As for the McFarland and similar cases, the court said:

> "* * * They simply hold that the rights of the widow are never waived by the neglect of her husband to insist upon his rights."

Other decisions by the Washington court follow: *Hiatt v. Department of Labor and Industries,* 48 Wash2d 843, 297 P2d 244; *Harbor Plywood Corp. v. Department of Labor and Industries,* 48 Wash2d 553, 295 P2d 310; *Ramsay v. Department of Labor and In-*

*dustries,* 36 Wash2d 410, 218 P2d 765; *Russell v. Department of Labor and Industries,* 194 Wash 565, 78 P2d 960. All of those decisions are in harmony with the principles which were employed in the McFarland, Beels, Noland and Purdy cases.

The above analysis of the Washington decisions appears to warrant the observation that the traditional distinction between "independent" and "derivative" rights and the consequences which normally flow from a determination that rights were or were not independent has not been the basis for the results reached in that state.

From *Linder v. City of Payette,* 64 Ida 656, 135 P2d 440, which was based upon the Idaho Workmen's Compensation Act, we quote the following:

> "Respondents' assertion that the former case is res judicata, barring recovery because the claim was not therein asserted, is groundless because neither the parties nor bases for compensation are the same. Evans v. Davidson, 57 Idaho 548, 67 P2d 83. The former action was by the administrator for an accrued claim under the special schedule statute, section 43-1113, I.C.A., while the present claim is by the widow and minor children under section 43-1101, I.C.A."

The following is taken from *Carroll v. State of Minnesota Department of Social Security,* 242 Minn 70, 64 NW2d 166:

> "We have held on a number of occasions that the rights of dependents to recover death benefits are separate and distinct from the rights of an employee to recover compensation or medical or hospital benefits during his lifetime. In State ex rel. Carlson v. District Court, 131 Minn 96, 97, 154 NW 661, we said:
>
> " '* * * The claim of plaintiff [the widow of a deceased workman] for compensation does not

arise from the injury to her husband, but is a new and distinct right of action created by his death.' See, also, Lewis v. Connolly Contracting Co., 196 Minn 108, 264 NW 581; Nyberg v. Little Falls Black Granite Co., 202 Minn 86, 277 NW 536; Johnson v. Pillsbury Flour Mills Co., 203 Minn 347, 281 NW 290; Dale v. Shaw Motor Co., 206 Minn 99, 287 NW 787.

"We also hold that the law in effect at the time of the employee's death governs the rights of the dependents."

In *O'Esau v. E. N. Bliss Co.*, 186 App Div 556, 174 NYS 739, affd. without opinion 227 NY 597, 125 NE 921, the court, in construing a statute which provided the right to compensation

"shall be forever barred unless within one year after the accident, *or* [emphasis added] if death results therefrom, within one year after such death, a claim for compensation shall be filed with the commission,"

held that the widow was not barred when her husband had not properly filed his claim.

In *Pardeick v. Iron City Engineering Co.*, 220 Mich 653, 190 NW 719, the court held the widow was not barred by the failure of her husband to make a claim. That result was based on the construction of a statute which was similar to the New York statute.

In *Wray v. Carolina Cotton and Woolen Mills Co.*, 205 NC 782, 172 SE 487, the court held that a mother was not barred when her son, the injured employee, had not filed a claim within the statutory period. The North Carolina statute provided:

"The right to compensation under this act shall be forever barred unless a claim be filed with the industrial commission within one year after the accident, *and* [emphasis added] if death results

from the accident, unless a claim be filed with the commission within one year thereafter."

In *Winston v. City of Richmond,* 196 Va 403, 83 SE2d 728, the court came to the conclusion that the dependent was barred, whether her rights were independent or derivative, by a statute which was identical to the North Carolina statute.

And, finally, in *Price v. Burlington Refrigerator Express Co.,* 131 Neb 567, 269 NW 425, the court, in dicta, said that the widow was barred by the failure of her husband to bring his claim during his life. The court analogized the case to other cases holding the widow was barred when the injured workman accepted a lump sum settlement, or elected to sue for damages at common law, or, in the absence of fraud, signed a release for an injury.

We find, therefore, that in four jurisdictions the widow is not barred when her deceased husband had failed to file his claim; the reason being either that the wife has a new, original claim or the language of a particular statute. In two jurisdictions we find that the widow is barred, the reason being that her right is treated as derived from her husband or the language of a particular statute. We have seen that in the Wray case and in the Winston case the statutes were substantially identical, yet the courts construed them differently and came to opposite results.

An occasional decision, such as *Nyberg v. Little Falls Black Granite Co.,* 202 Minn 86, 277 NW 536, which recognizes that the dependent's rights are independent of those of the injured workman, takes the view that in the enforcement of the right the dependent's proceeding is merely a continuation of the injured workman's. In the case at bar, that point of view would not help the defendant commission.

Larson's Workmen's Compensation Law, § 64.10, cites the decisions of which we have taken notice and many others to support the following principles:

"The dependent's right to death benefits is created directly by statute; it is not derived from the rights of the deceased employee. This principle leads to several conclusions of practical importance.

"The settlement, compromise or release by the deceased of his rights under the act cannot bar the statutory rights of his dependents, since they are independently created by statute. * * *

"Similarly, the amount due by statute as death benefits is not diminished by payments made to the injured employee himself while he was alive, unless there is express statutory provision for a different rule.

"The most striking consequence of the independent status of dependency rights is the rule, accepted by the majority of jurisdictions, that an adverse decision on the merits of a claim by the employee while he was alive does not bar a dependency claim under the doctrine of res adjudicata, since the parties and rights involved are different, and since the dependent is not in privity with the injured employee as to the rights asserted by him. * * *

"A fortiori, the defeat of the employee's claim on procedural grounds such as failure to file a timely claim, or his complete failure ever to make claim during his lifetime, is not a bar to the rights of his dependents. His unexcused failure to give a required notice of injury has, however, elicited a difference of opinion among the courts, on the theory that the employer is prejudiced as to all possible claims growing out of the injury if he is not given timely notice of it."

Schneider, Workmen's Compensation, Vol 9, Perm Ed, § 1901, declares:

"An injury to a workman may give rise to two rights of action, one by the employee for compensa-

tion for the injury and another by his dependents if the employee dies. The actions are based upon separate and distinct claims, one arises at the date of the injury, the other at the date of the death of the injured employee."

We will review the authorities no further. It will be recalled that one section of our Workmen's Compensation Act (ORS 656.206) defines the term "permanent total disability" as that term is employed in the section (ORS 656.208) to which plaintiff has resorted. ORS 656.206 says:

> " 'Permanent total disability' means the loss of both feet or hands, one foot and one hand, total loss of eyesight or such paralysis or other condition permanently incapacitating the workman from regularly performing any work at a gainful and suitable occupation."

That is the definition. It is simple and its meaning unmistakable. It does not qualify its import by employing any qualifying clause, such as "provided the commission entered, during the lifetime of the workman, an order which adjudged him permanently disabled." If a workman's injury cost him his eyesight or both feet, but the commission failed to enter an order that he was permanently totally disabled, surely no one would deny the widow the benefit of ORS 656.208. Accordingly, the statute contains no demand that the widow should be able to point to a finding made by the commission prior to the workman's death which established his permanent total disablement. Decisions such as the one entered in the McFarland case demonstrate the validity of the conclusion just expressed. And let us bear in mind that the Washington decisions were hammered out upon the anvil of experience by a court which was confronted many times by issues similar to the one at bar.

We will not concern ourselves further with the vagaries of statutory construction, but will examine the authority for the contention that the widow has a new, original right.

We have noticed that in the majority of jurisdictions an adverse decision on the merits of a claim, presented by the employee while he was alive, did not bar a dependency claim under the doctrine of res adjudicata, since the parties and rights involved are different and the dependent is not in privity with the injured employee as to the rights assured him.

The Washington decisions seem to indicate that the doctrine of res adjudicata is of little help in actually deciding cases. In cases involving the question of whether a statute is applicable, the death benefits are there treated as being derived or as having arisen at the time of the injury. In cases involving the failure of the workman to file his claim and in those involving the competency of certain evidence, the widow's claim is treated as independent.

It is therefore clear, we believe, that, although the courts generally deem the widow's rights independent of those of her deceased husband, the cases are decided with an eye to providing a reasonable answer to the problem presented by each case, rather than pursuant to any formula stemming from the doctrine of res adjudicata. It is an explicit policy of the Oregon act that the commission should withhold final settlement until everything possible has been done to restore the workman to health. Because the temporary total disability benefits are, roughly, comparable to the permanent total disability benefits, there is no incentive for an injured workman to seek a quick decision on the question of whether he is temporarily totally disabled or permanently totally disabled. A holding that

the "period of permanent total disability" must be determined by the commission before death would hamper this policy by creating an urgent necessity for an early decision.

Such an interpretation would also make possible, and even require, continuous litigation; that is, if the claim is rejected at one moment in the injured workman's struggle to regain health, he might feel impelled to present it again and again when he felt that his condition was becoming worse. Further, such an interpretation would provide the basis for disagreement and acrimony between people in serious trouble. It would be to the workman's benefit to remain under temporary total disability and thereby receive medical and hospital treatment, but the wife's interests would be promoted if he were deemed permanently totally disabled. An injured workman, who was concerned with his family and their maintenance after his death, would be anxious to have an order entered by the commission adjudging him permanently totally disabled, and, in order to gain an entry of that kind, might be impelled to make a poor settlement for himself, thereby depriving him of medical attention which, if given, might have restored him to a sound condition.

For the above reasons and for the further one that the available authority supports the result, we hold that the widow may show that her husband was, in fact, permanently totally disabled as a result of his injury in the period immediately before death.

The judgment of the circuit court is affirmed.

McAllister, J., dissents.

**ON RESPONDENT'S MOTION**

Anderson, Franklin, O'Brien & Hanlon, Portland, for respondent.

Robert Y. Thornton, Attorney General, Gerald C. Knapp and Ray H. Lafky, Assistant Attorneys General, Salem, for appellant.

ROSSMAN, J.

This cause is before us again, this time upon a petition filed by the plaintiff for the allowance to her of an attorney fee in the sum of $750 for the services

which her counsel performed. The motion cites ORS 656.292 and, unlike the one filed in *King v. State Industrial Accident Commission,* this day decided by us, is unaccompanied with a bill of particulars. We assume that compensation is sought only for legal services performed in this court. In the King case, in awarding compensation for counsel's services, we depended in part upon the schedule of minimum fees and charges promulgated by the Oregon State Bar.

A glance at the opinion filed in this case will show that the issues which confronted counsel were no less difficult than those that were resolved in the King case. Counsel for the plaintiff in this case made an appearance before this court and filed a worthy brief. They also delivered two arguments before the court. The second was expressly requested by this court and had as its subject matter issues to which counsel were expressly requested to give attention. No new brief was presented in connection with the second argument. Based upon the aforementioned minimum schedule of fees, counsel for the plaintiff should be awarded an attorney fee of $500. We realize that the attorneys for the plaintiff in this case performed effective services for their client and secured for her an amount of compensation which may be large. For the reasons expressed in *King v. State Industrial Accident Commission,* we think that we are not justified in awarding a sum larger than $500. Such will be the award. It will be "in addition to the compensation." The quoted words were taken from ORS 656.292.