NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

MARY KAZAZIAN, PETITIONER, v. GEORGE SEGAN AND
MORRIS KATZ, TRADING AS NEW YORK GIRLS COAT
COMPANY, AND MAX DARDICK, RESPONDENTS.

Decided January 14, 1936.

For the petitioner, *Benedict Krieger.*

For the respondent New York Girls Coat Company, *Skeffington & Walker* (by *James J. Skeffington*).

For the respondent Max Dardick, *Herbert C. Dolan.*

\*       \*       \*       \*       \*       \*       \*

It appears that on November 1st, 1927, the decedent, Vera Kazazian, while crossing the street was struck by a taxicab and suffered a fracture of the left ankle. It appears that she recovered from this injury and in the year of 1929 she received a strain to the left sacroiliac joint for which she was treated and the medical testimony was to the effect that she suffered a separation of the left sacroiliac joint, she, however, subsequent to this continued working and on June 20th, 1932, while carrying a bundle of cloth and attempting to open a door she twisted her back, felt a pain, and was subsequently treated by various doctors at various hospitals, as a result of the accident on June 20th, 1932. A further petition was filed under date of November 23d, 1932, claiming compensation and after the hearing an award was made allowing her twenty-six weeks temporary disability and fifteen per cent. of total

permanent disability, amounting in all to one hundred and one weeks, at the rate of $10 per week. In making this award the prior condition of Vera Kazazian was also considered by the referee and in sustaining the bureau's award Common Pleas Judge Lloyd B. Thompson of Union county who reviewed the testimony on appeal, stated in part as follows:

"I think the testimony warranted the finding of the referee that not all the original disability is due to the accident in question in this case, that she was suffering prior to this accident from an injury previously suffered in 1929, and that the present injury was not merely an aggravation of a previous condition that was quiescent but that she actually complained of suffering before the most recent injury."

Subsequent to the award she was again treated for her back and the testimony of various witnesses, both medical and lay, was that she suffered attacks of pain, talked and acted irrationally, bit her hands, her sleep was affected, she at no time obtained relief from pain and the wound in back never healed.

On June 20th, 1934, petitioner met death by hanging. It is alleged that due to the various symptoms complained of that in a delirium of frenzy petitioner committed suicide in the manner described above.

The general rule followed where it is alleged that suicide is the result of the trauma is as follows:

Where there follows as a result of a physical injury an insanity such as to cause the employe to take his own life through an unaccountable impulse or in a delirium of frenzy without conscious volition to produce death having knowledge of the physical consequence of the act, there is a direct and unbroken connection between the injury and the death, but where the resulting insanity is such as to cause suicide through a voluntary willful choice determined by a moderately intelligent mental power which knows the purpose and the physical effect of the suicidal act. even though choice is dominated by a disordered mind, then there is a new and independent agency. which breaks the chain of causation arising from the injury.

This doctrine was followed in the case of *In re Sponalski*, 108 *N. E. Rep.* 466; In re: Charles Ebner the petitioner

was still under temporary, became insane, was committed to an asylum and committed suicide. It was held non-compensable by the Ohio industrial commission. 1 *Bulletin No. 7* p. 47.

In *Withers* v. *London Brighton, &c., Railway*, 9 B. W. C. C., it was held no causal connection was shown between death by suicide and an accident in employment. It was said that for suicide to be by accident the suicide must be the effect of insanity and the insanity must be the result of the accident. In this case petitioner suffered an injury to his thumb, same became infected and took a long time in healing. Petitioner became depressed and suffered from neurasthenia subsequently committed suicide by throwing himself in front of a train.

Lord Couzens Hardy, M. R., states in this case: "To make death by suicide during insanity compenasble under the act it must be shown that there is a causal connection between the accident and the insanity and the suicide and that a mere conjecture alone will not suffice and applying the rule there laid down to the case at bar he held that the applicants did not meet the burden of proof which was on them to show, that the suicide was the result of the accident, there being no proof whatever of actual injury to the brain. The mere showing that there was no insanity before the injury, that symptoms of neurasthenia began to develop some two or three months afterwards, and that the depression and subsequent delusion centered on the injury and its consequences, real or imagined, did not amount to proof that the injury was the cause of the mental symptoms. I think as the Scottish courts said, there must be some direct evidence of the insanity being as the result of the accident—something more than the insanity being subsequent in turn to the accident. The legal causation must be established and proved."

In re *Industrial Commission of Ohio* v. *Brubaker*, 129 *Ohio St.* 617; 196 *N. E. Rep.* 209 (1935)—Decedent was injured in the course of his employment while lifting a box from the floor and placing it on a table. The injury consisted of a strain of the right hip, the psoas magnus muscle being involved. Decedent was under continuous treatment for the

condition by an osteopath. An award of compensation for the injury was made. Within a week after the award was made, but before he received the check decedent committed suicide. The award made for the injuries was paid to the widow, claimant herein, but she claimed compensation for decedent's death on the ground that his injury lead to mental derangement and suicide. The evidence indicated decedent abhorred the thought of being a cripple and burden on his wife, that he had financial worries, and had talked of suicide. The industrial commission denied the claim, but upon trial by jury in the Court of Common Pleas there was verdict and judgment for claimant, which was affirmed below. In reversing the judgment below and entering judgment for the commission, the court held that the evidence was not sufficient to establish that decedent committed suicide as the result of insanity caused by his injury at work. The court said:

"This court has held * * * that there can be no recovery for injuries except such as are traumatic in their nature. If [claimant] is permitted to recover in this case, it must be because [decedent] received an injury in the course of his employment, which injury produced mental derangement to the extent that he could not entertain a fixed purpose to take his own life, and that the taking of his own life, was the direct result of that lack of purpose that characterizes an insane mind. The mere fact of suicide presents no presumption of insanity. There is a general presumption that all men are sane until they are proven to be insane * * *. Analyzing this testimony [for claimant] the doctor simply testified that the facts [decedent] was injured, and was not working, and could not work, and did not know whether he was going to work, had an effect upon his mind. In other words, he worried because he was injured, not because the injury directly affected his nervous system so as to produce worry. This court will not weigh testimony; but we are unable to find in this record any testimony from which reasonable minds could reach different conclusions."

After giving this matter very careful consideration I find as a fact and hold that the petitioner on the morning in question by her preparation for the act showed a moderately intel-

ligent mental power which knew the purpose and physical effect of the suicidal act. The selection of a tree some distance from her home, the arranging of the chair, the bringing of a sheet, the throwing of the sheet over the limb of the tree, her arranging the sheet about the neck, the tying and the other events leading to the event itself were only those of one with moderately intelligent mental power.

We must also consider that the injury of 1929 added also to her condition and must be considered. I also feel, and might comment casually in passing that in my opinion, the petitioner has failed to sustain the burden of proving dependency upon the decedent, but I find it unnecessary to dwell upon this phase of the case as I am convinced and find as a fact that there is no connection between the accident alleged and the act of suicide on the part of the decedent, and I am consequently dismissing the petition.