Barber, Appellant, vs. Industrial Commission and others, Respondents.*

*October 16—November 10, 1942.*

* Motion for rehearing denied, with $25 costs, on January 12, 1943.

*L. A. Tarrell* of Milwaukee, for the appellant.

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

*Charles H. Gorman* of Milwaukee, for the respondents Burrell Engineering Company and American Mutual Liability Insurance Company.

WICKHEM, J.    The question in this case is whether the death of plaintiff's husband by suicide is compensable under the circumstances.    This presents a question of proximate cause.    There is some difference of opinion between plaintiff and defendants as to whether we are here faced with a question of fact or law, but in any event, we shall state the facts which are necessary to an understanding and determination of the question.

Deceased was an employee of the engineering company, and was injured on April 3, 1939, by falling astride a hopper in the course of his employment.    He sustained a rupture of the urethra and an injury to the bladder, as well as pain in the back and pelvic region, and frequency of urination.    In addition, he became sexually impotent.    Following this, he became moody and despondent, and on March 28, 1940, he left home, went to Canada, engaged a room in a hotel, and committed suicide.    Prior to his death, deceased made application to the Industrial Commission for compensation, and the hearings upon this application resulted in findings that applicant had sustained no permanent disability as a result of his injury, but did have prostatitis that would require treatments. The application involved here is for death benefits and burial expenses on account of the death of plaintiff's husband, upon the theory that as a result of the accident that he suffered pain and the loss of his sexual powers which produced a mental depression and caused him to commit suicide.

The findings of the commission are to the effect that because of his physical condition, deceased developed a psychosis

causing him to become devoid of normal judgment; that in all probability he would not have committed suicide had it not been for the conditions, both mental and physical, which resulted by reason thereof; "that decedent had rational knowledge of the consequences of his act and acted with conscious volition to produce his death; that suicide was the result of the action of a moderately intelligent mental power, with knowledge of the purpose and effect of his act, but that decedent, upon said occasion, was dominated by a disturbance of his mind, directly caused by his injury and its consequences; that suicide did not result from insanity of such violence as to cause the decedent to produce death in a delirium or frenzy without conscious volition, nor while suffering severe pain; that decedent was capable of appreciating the consequences of his act, but was incapable of resisting the emotional impetus toward suicide resulting from the mental condition caused by his injury; that decedent's act in committing suicide was an intervening cause for death and that suicide and death did not proximately result because of his injury."

That these findings are clearly sustained by the evidence is not disputed. The findings indicate that the injury to deceased produced certain physical disabilities, and that the pain and humiliation involved in these disabilities created what for deceased was an intolerable condition, and that he became profoundly depressed. With full knowledge of what he was doing he chose deliberately to end his life as an escape from these intolerable conditions. His morbid mental condition had not however progressed to the stage of insane frenzy. He still had moderately intelligent mental power, rational knowledge of the consequences of his act, and the capacity for conscious volition. Upon these facts the commission and the trial court correctly denied compensation and this for two reasons.

Sec. 102.03 (1) (d), Stats., excludes compensation for intentionally self-inflicted injuries. It is evident that death

by suicide constitutes an intentionally self-inflicted injury, and where the insanity of the person so ending his life has not progressed to the stage of destroying capacity to entertain an intention, the statute plainly excludes compensation for the injury. In this connection see *Vennen v. New Dells Lumber Co.* 161 Wis. 370, 154 N. W. 640; *Simmons Co. v. Industrial Comm.* 211 Wis. 445, 248 N. W. 443. Findings to the effect that decedent did not act upon uncontrollable impulse or in a delirium or frenzy, but with conscious volition, and in the exercise of a moderately intelligent mental power, with knowledge of the purpose and effect of his act, seem quite clearly to us to preclude recovery because of the exclusions of sec. 102.03 (1) (d).

A second reason why compensation must be denied in this case is that the voluntary, wilful act of suicide resulting from a moderately intelligent power of choice is an intervening cause that precludes compensation. The rule established by the overwhelming weight of authority is well summarized in *Daniels v. New York, N. H. & H. R. Co.* 183 Mass. 393, 399, 67 N. E. 424. The court there said:

"We are of opinion that the voluntary, wilful act of suicide of an insane person, whose insanity was caused by a railroad accident, and who knows the purpose and the physical effect of his act, is such a new and independent agency as does not come within and complete a line of causation from the accident to the death. . . . An act of suicide resulting from a moderately intelligent power of choice, even though the choice is determined by a disordered mind, should be deemed a new and independent, efficient cause of the death that immediately ensues."

See also in this connection *Brown v. American Steel & Wire Co.* 43 Ind. App. 560, 88 N. E. 80; *Tetrault's Case,* 278 Mass. 447, 180 N. E. 231; *Ruschetti's Case,* 299 Mass. 426, 13 N. E. (2d) 34; *Kazazian v. Segan,* 14 N. J. Misc. 78, 182 Atl. 351; *Industrial Comm. of Ohio v. Brubaker,* 129

Ohio St. 617, 196 N. E. 409; *Long v. Omaha & C. B. Street R. Co.* 108 Neb. 342, 187 N. W. 930. For cases in which compensation or damages were allowed where the suicide was not the result of a moderately intelligent power of choice, but rather attributable to ungovernable lunacy, insane frenzy, or irresistible impulse, see *Sponatski's Case,* 220 Mass. 526, 108 N. E. 466; *Gasperin v. Consolidated Coal Co.* 293 Pa. 589, 143 Atl. 187; *McFarland v. Dept. of Labor and Industries,* 188 Wash. 357, 62 Pac. (2d) 714.

The doctrine of these authorities, as applied to the findings of fact of the commission, require the holding that the suicide constituted an independent, intervening cause of the injury and prevents compensation. The physical injury sustained by decedent was not permanent in a physical sense. There was no physical injury of any sort to the brain itself. What happened in this case was that decedent was unable to tolerate the pain, inconvenience, and humiliation caused by his physical condition and deliberately chose to end his life. It was a morbid choice but, as the commission found, upon sufficient evidence, the deliberate choice of a person of moderately intelligent mental powers, with rational knowledge of the consequences, and the act itself was done with conscious volition. The element of insane frenzy or ungovernable lunacy was wholly absent.

*By the Court.*—Judgment affirmed.

FOWLER, J. (*dissenting*). I cannot agree with the decision in this case. It is based upon two propositions. These are that, (1) the act by which the suicide was committed constituted an injury intentionally inflicted by the deceased, and this under sec. 102.03 (1) (d), Stats., absolves the employer from liability; and (2) the act by which the suicide was committed constituted an intervening cause of the death.

I agree with the major proposition embraced in (1) but think that the act of the deceased was not an intervening cause,

and that to reach the result reached by the majority opinion the act of the deceased must have operated as such cause. Otherwise the manifest and controlling purpose and intent of the act to award death benefits when a condition caused by an industrial accident causes death is frustrated.

As stated in the majority opinion, the following facts were found by the commission: Because of the physical condition resulting from his accident the deceased developed a psychosis that caused him to be devoid of normal judgment; he would not have committed suicide had it not been for the conditions both mental and physical which resulted from the accident; the deceased in committing suicide was dominated by a disturbance of mind directly caused by his injury and its consequences.

On these facts it seems plain to me that the death was the direct "end result" of the injuries sustained in the accident. In other words, the condition caused by the accident caused the death. The facts stated existing, it is of no consequence that the commission found that the deceased was conscious that the cutting of his wrists would result in death, or that the wounds were not inflicted in a delirium or frenzy without conscious volition. The effect of the bare facts first stated cannot be obviated, whether the deceased was sane or insane in a medical or psychological sense, or by the commission or the court adopting the view of one or another expert. Nor can such effect be obviated by calling the intervening act an intervening cause when it is not such. The slashing of the wrist was an intervening act, but not an intervening cause. An intervening cause is one occurring entirely independent of a prior cause. When a first cause produces a second cause that produces a result, the first cause is a cause of that result. *Kramer v. Chicago, M., St. P. & P. R. Co.* 226 Wis. 118, 128, 276 N. W. 113; *Morey v. Lake Superior T. & T. Co.* 125 Wis. 148, 103 N. W. 271. There is then a direct as distinguished from a broken sequence, and the first cause is a re-

sponsible and proximate cause of the result. This seems to me so plain as not to be set aside by any species of fine-spun reasoning. The act of the deceased in the instant case is no more an intervening cause of his death than is following the advice of a physician who is treating a plaintiff for injuries inflicted by the defendant, when so doing results in a condition to alleviate which the patient must take especial treatment not necessary or appropriate to treatment of his original injury, in which case the expense, loss, and suffering caused by the especial treatment proximately result from the defendant's act. *Sumner v. Kinney* (Tex. Civ. App.), 136 S. W. 1192, 1196. Under the bare facts first above stated, the original injuries by direct sequence of causation resulted in death, and liability under the act follows whenever this sequence appears.

I concede that under the cases cited in the opinion of the court, and the quotations from the opinions in those cases there given, the conclusion of the commission and the court is correct if those cases were correctly decided, provided of course that the statutes involved under those cases are the same as ours. But by no process of reasoning by any court can I be convinced that what looks black to me is white.

I think the judgment of the circuit court should be reversed with directions to remand the cause to the Industrial Commission with direction to the commission to award the widow the death benefits prescribed by the act.

I am authorized to state that Mr. Justice FRITZ concurs in this dissent.