BRENNE, Special Administratrix, Respondent, v. DEPARTMENT OF INDUSTRY, LABOR & HUMAN RELATIONS and others, Appellants.

*January 3—February 27, 1968.*

86

88

For the appellant Industrial Commission (now Department of Industry, Labor & Human Relations) the cause was argued by *James P. Altman,* assistant attorney gen-

eral, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the appellants St. Croix County Electric Cooperative and Employers Mutual Liability Insurance Company there was a brief by *Wilcox & Wilcox* of Eau Claire, and oral argument by *Francis J. Wilcox.*

For the respondent there was a brief by *Gavic & Richardson* and *Robert R. Gavic,* all of Hudson, and oral argument by *Robert R. Gavic.*

CONNOR T. HANSEN, J. The trial court directed the commission to reconsider the rule established in *Barber v. Industrial Comm.* (1942), 241 Wis. 462, 6 N. W. 2d 199. It is our conclusion that this should be done.

The particular statute involved is sec. 102.03, Stats., entitled Conditions of liability, which provides as follows:

"(1) Liability under this chapter shall exist against an employer only where the following conditions concur:
" . . .
"(d) Where the injury is not intentionally self-inflicted."

We deem the historical background and development of the law relating to workmen's compensation death benefits from suicide to be of particular significance.

The Wisconsin Workmen's Compensation Law was enacted in 1911. Thereafter, Massachusetts formulated what has generally been referred to as the *"Sponatski* rule." *Sponatski's Case* (1915), 220 Mass. 526, 530, 108 N. E. 466, 468:

"It is that where there follows as the direct result of a physical injury an insanity of such violence as to cause the victim to take his own life through an uncontrollable impulse or in a delirium of frenzy 'without conscious volition to produce death, having knowledge of the physical nature and consequences of the act,' then there is a direct and unbroken causal connection between the physical injury and the death."

Although *Sponatski* was a workmen's compensation case, this standard was derived from the case of *Daniels v. New York, N. H. & H. R. R.* (1903), 183 Mass. 393, 67 N. E. 424. *Daniels* was not a workmen's compensation case, but rather a tort action.

This court first considered the question of workmen's compensation death benefits resulting from suicide in *Barber*. The court adopted the *Sponatski* rule. In *Barber* there was a strongly worded dissent by Mr. Justice FOWLER, joined in by Mr. Justice FRITZ, which recognized a distinction between a claim for death benefit under workmen's compensation law and a cause of action under tort law. A year later in *Jung v. Industrial Comm.* (1943), 242 Wis. 179, 7 N. W. 2d 416, the court by a four-to-two majority affirmed the rationale and result of *Barber*. *Jung* was the last occasion this court considered this question.

There is no question but that the *Sponatski* rule (voluntary, wilful choice test) was the majority rule at the time of *Barber*. It would appear that some jurisdictions still adhere to its rationale; however, a reputable number of jurisdictions, with statutory provisions substantially similar to those of Wisconsin, have either abandoned it or in the cases of first impression adopted the "chain-of-causation test." It appears that Iowa, Minnesota, Missouri, New Jersey, Ohio, Pennsylvania, Texas, Vermont (by dictum only) and Washington still adhere to the rule of *Sponatski*. However, recent lower court decisions in Ohio and Pennsylvania reveal a trend toward the "chain-of-causation" rationale. Arizona, California, Connecticut, Florida, Illinois, Michigan, Mississippi and New York have adopted the "chain-of-causation test." *See* 15 A. L. R. 3d (1967), 616, 621–623.

The law of workmen's compensation is not intended to employ the common-law concepts of negligence in determining liability. Work-connection rather than fault underlies recovery. The purpose of the workmen's compensation statutes is to provide financial and medical

benefits to the victim of "work-connected" injuries and their families—regardless of fault, and to allocate the financial burden to the most appropriate source, the employer, and, ultimately the consumer of the product. Clearly, in a proper case, the provisions of sec. 102.03 (1) (d), Stats., should be given full force and effect so that industry should not have to carry the burden of compensating for a death for which it was in nowise responsible. *See Whitehead v. Keene Roofing Co.* (Fla. 1949), 43 So. 2d 464. The concept of workmen's compensation law is entirely different than the tort concept, where liability is based upon fault. *See Cutler-Hammer, Inc., v. Industrial Comm.* (1958), 5 Wis. 2d 247, 92 N. W. 2d 824. Even in criminal cases the important element of "intent" requires the sound mind and discretion of the accused. There can be no intention to commit an act in the sense of the Workmen's Compensation Act if the mind of the actor is such that it is not sound, and that because of compulsion due to a work-connected injury he is unable to exercise a sound discretion.

In reality the *Sponatski* rule, as adopted by this court in *Barber,* incorporates both the *Daniels* standard of tort liability based upon fault and the *M'Naghten rule* (1843), 10 Clark & F., *200, *210, *211, 8 Eng. Reprint 718, for criminal insanity, into the law of workmen's compensation. The incorporation of such standards is inappropriate within the framework of the workmen's compensation statutes.

Modern psychiatry knows that a manic depressive condition operates to break down rational mental processes, placing the person afflicted in a mental state in which death actually seems more attractive than living, and in which he may not only have a conscious volition to produce death, but be eager to do so.

The burden of proof is on the claimant to establish by substantial evidence that the "chain-of-causation" exists. The claimant does this by showing that the indus-

trial injury caused the suicide. The record before us is devoid of any significant event in the life of the deceased from the time of the accident until his death. In workmen's compensation law, we are not concerned with foreseeability as understood in negligence actions under tort law, but only as to causation under the statutory liability.

There are inherent difficulties in proving that one who kills himself by his own hand does so because of injuries sustained in an accident, however the burden of proof is upon the claimant.

Larson, in his scholarly treatise on workmen's compensation, concludes:

"The question whether the actor appreciated the consequences of his act should not be decisive on the fundamental question whether that act was the natural and foreseeable result of the first injury. To say that it was not such a result, one must take the position that it is unforeseeable that a man, in unbearable pain, will knowingly take his own life. That position is simply untenable, and if any evidence is needed, the number of compensation cases presenting these facts should be proof enough. If the sole motivation controlling the will of the employee when he knowingly decides to kill himself is the pain and despair caused by the injury, and if the will itself is deranged and disordered by these consequences of the injury, then it seems wrong to say that this exercise of will is 'independent,' or that it breaks the chain of causation. Rather, it seems to be in the direct line of causation." 1A Larson, *Law of Workmen's Compensation*, p. 510.22, sec. 36.30 Chain of causation test.

The statutory provisions of California are remarkably similar to those in Wisconsin. The exclusion is predicated on an "intentionally self-inflicted act." In a comparatively recent case of first impression the California Supreme Court considered the matter presently before us and therein stated:

"We believe that in those cases where the injuries suffered by the deceased result in his becoming devoid of

normal judgment and dominated by a disturbance of mind directly caused by his injury and its consequences, his suicide cannot be considered 'wilful' within the meaning and intent of the Act." *Burnight v. Industrial Accident Comm.* (1960), 181 Cal. App. 2d 816, 5 Cal. Rptr. 786.

While the act of suicide may be an independent intervening cause in some cases, it is certainly not so in those cases where the incontrovertible evidence shows that, without the injury, there would have been no suicide; that the suicide was merely an act, not a cause, intervening between the injury and the death, and that it was part of an unbroken chain of events from the injury to the death.

The appellants contend that even if this court should now support the "chain-of-causation test," claimant has failed to establish an essential element, *i.e.*, that Donald Brenne's psychoneurosis caused his suicide.

This question was posed to Dr. Tobin who indicated that at times he felt Donald Brenne was suicidal and that, hypothetically, the depression could have resulted in suicide. Also the hearing examiner, in his findings of fact, determined that he "cannot presume that the injured acted upon an uncontrollable impulse or that on the date of death his mental deterioration had progressed to the state of destroying capacity to entertain an intention of suicide; that he did not act upon an uncontrollable impulse but in the exercise of moderately intelligent mental power, with knowledge of the purpose and effect of his act; that the suicide was a voluntary act and was an independent, intervening cause of death." It is evident that the standard properly utilized by the examiner was that enunciated in the *Barber* majority opinion, *i.e.*, the "voluntary, wilful act" standard. Inasmuch as the examiner and the commission could not properly consider the evidence within the rules here set forth, it will necessitate a redetermination of this question in the light of the record and evidence.

The issue is also raised as to whether there is credible evidence to support the commission's finding that the decedent's death by suicide was not caused by his original injury.

The appellants take the position that there is ample evidence to sustain the commission's finding of fact that the death of Donald Brenne on May 29, 1965, was not caused by the injury on June 17, 1958.

In raising this issue, appellants take the position that the question of causation can somehow be divorced from the issue of intentional self-inflicted injury. One of the holdings of the *Barber* majority opinion is that if the act of suicide results from a moderately intelligent power of choice, and not from an insane frenzy, it is an independent, intervening cause which precludes recovery.

However, the chain-of-causation approach, which we have previously herein considered as it relates to workmen's compensation statutes, also encompasses the question of intentional self-infliction of injury since one of the elements is the establishment of a condition, resulting from the original injury, which so dominates the mind as to make it devoid of normal judgment and causes the act of suicide. The act of suicide cannot then be said to be wilful or intentional within the meaning of the statute since its causation ultimately relates back to the original injury, rather than existing as an independent and intervening cause.

This was succinctly pointed out by Mr. Justice FOWLER in his dissent in *Barber, supra,* wherein he concedes the majority's position on the interpretation of the intentional infliction of injury, yet bases his opinion for reversal solely upon the chain-of-causation standard since the injured "would not have committed suicide had it not been for the conditions both mental and physical which resulted from the accident;"

The resolution of this issue must, therefore, depend upon the redetermination of the previous issue by the commission upon remand.

The next issue presented for consideration is whether the commission erred in making no finding as to whether the deceased sustained a permanent psychic disability as a result of the severe physical injury he received.

The trial court, in effect, did so conclude, and further held even if it (commission) had made a finding that there was no permanent partial psychic disability, its ruling would have to be reversed as there is no medical evidence in the record to support such a finding. We agree with the trial court.

Dr. John A. May, a general practitioner from the Baldwin Clinic, testified that the decedent had suffered a disability, taking into consideration the body as a whole, and that most of this disability was mental. He deferred to Dr. Tobin on the extent of the psychic disability. Dr. Tobin testified that his diagnosis was psychoneurosis, anxiety state, with features of depressive conversion reaction and somatization associated with an electrical injury. He further testified that in his opinion there was a direct causal relationship between the condition described in his diagnosis, which he made in October, 1964, and the injuries Donald Brenne sustained on June 17, 1958. Dr. Merritt Jones, who specializes in industrial surgery saw the deceased for about an hour on one occasion in September of 1959, on behalf of the insurer. This was long before the mental condition of the deceased became such an acute problem that it caused psychiatric hospitalization and treatment.

The appellants urge that there was no credible evidence upon which the commission could make a finding of permanent partial psychic disability. The thrust of the argument is that the claimant did not sustain her burden of proving that the injury of her husband caused "measurable" permanent partial disability in the nature of psychoneurosis. They also contend that although Donald Breene was given a different type of work when he returned to work after the injury, there is no showing that he suffered an impairment of earning capacity dur-

ing his lifetime and, hence, no allowance can be made for physical or mental suffering as a result of a psychic disability. 2 Larson, *Law of Workmen's Compensation,* p. 137, sec. 65.20.

This theory is predicated upon a supposed claim for compensation for an injured employee during his lifetime and does not reach the fact that the claim now under consideration is one for death benefits due to suicide which involves questions of compensation extending beyond the actual lifetime earnings of the decedent. 2 Larson, *supra,* pp. 122, 123, sec. 64.

Furthermore, it is contended that the failure or refusal to find permanent partial psychic disability must be construed as a finding that there was no such disability. *Gallenberg v. Industrial Comm.* (1955), 269 Wis. 40, 43, 68 N. W. 2d 550. The cases relied upon by appellants are distinguishable since they contain evidence from which inferences could have been drawn which in turn justified the commission's silence or specific finding as to no disability. *Gallenberg, supra; Borum v. Industrial Comm.* (1961), 13 Wis. 2d 570, 108 N. W. 2d 918 (disposed of on jurisdictional grounds); *Shymanski v. Industrial Comm.* (1956), 274 Wis. 307, 79 N. W. 2d 640; *Johnson v. Industrial Comm.* (1961), 14 Wis. 2d 211, 109 N. W. 2d 666; *Globe Steel Tubes Co. v. Industrial Comm.* (1947), 251 Wis. 495, 29 N. W. 2d 510.

In this case there is no credible evidence to sustain the silence of the industrial commission on this question of fact.

Finally, it is contended that the circuit court exceeded its reviewing authority under sec. 102.23 (1), Stats., which provides in part:

". . . Upon such hearing, the court may confirm or set aside such order or award; and any judgment which may theretofore have been rendered thereon; but the same shall be set aside only upon the following grounds:

". . .

"(c) That the findings of fact by the commission do not support the order or award."

The commission made no specific finding as to permanent partial psychic disability and since it has been determined there was no credible evidence to support the absence of such a finding, it is entirely proper for the circuit court to consider the matter under its statutory reviewing authority. We note that the record also discloses that the commission allowed travel expenses incurred by the decedent in 1964 and 1965 for 14 visits to Dr. Tobin, and the actual reimbursement for medical expenses incurred to the Northwest Psychiatric Clinic.

*By the Court.*—Judgment affirmed and cause remanded to the Department of Industry, Labor & Human Relations, with directions to determine whether decedent sustained permanent partial psychic disability, and to determine whether the psychoneurosis caused the suicide, applying the standards here enunciated.