Laurie A. STUPAK, Plaintiff,

v.

HOFFMAN–LA ROCHE, INC., ABC Insurance Company, Roche Laboratories, Inc., Def Insurance Company, Michael J. Smullen, M.D., Ghi Insurance Company, Wisconsin Patients Compensation Fund, Defendants.

No. 03–C–421.

United States District Court, E.D. Wisconsin.

Oct. 9, 2003.

Frank A. Stupak, Jr., Stupak & Bergman, Escanaba, MI, for Plaintiff.

Allen A. Arntsen, Foley & Lardner, Naikang Tsao, Foley & Lardner, Madison, WI, for Defendants.

## DECISION AND ORDER

GRIESBACH, District Judge.

This is a wrongful death action in which the plaintiff claims that a drug prescribed for her son by his doctor caused him to kill himself. The case is presently before me on the motion of the company that developed and manufactures the drug to dismiss for failure to state a claim on which relief can be granted. For the reasons that follow, the motion will be denied.

## I. BACKGROUND

On May 14, 2000, plaintiff's son, Bartholomew Thomas Stupak, died of a self-inflicted gunshot wound to the head. Bartholomew was seventeen-years-old at the time of his death and lived with his parents in Menominee, Michigan. In the months before his death, Bartholomew was being treated by Dr. Michael Smullen, a Green Bay dermatologist, for a skin condition. Dr. Smullen prescribed Accutane for Bartholomew's condition, a drug manufactured and sold by Hoffman–La Roche, Inc., and Roche Laboratories, Inc. (collectively "Roche"), and approved by the United States Food and Drug Administration (FDA). Hoffman–LaRoche, Inc., and Roche Laboratories, Inc., are New Jersey and Delaware corporations, respectively, with their principal places of business in New Jersey.

On May 12, 2003, plaintiff filed this wrongful death action against Roche in which she alleges that her son's death resulted from suicide ideation caused by the ingestion of Accutane. Plaintiff alleged that Roche knew that Accutane caused depression, psychosis and suicide ideation, but had continued to market and sell the drug without adequately warning the public of the risks associated with its use. She asserted claims against Roche based upon negligence, strict liability and breach of implied warranties, and requested both compensatory and punitive damages.

Roche responded with a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) in which it argues that plaintiff's claims are governed by Michigan law which bars actions against manufacturers or sellers of FDA approved drugs. Alternatively, Roche argues that the action fails under Wisconsin law which generally treats suicide as an intervening cause that precludes liability in wrongful death actions.

In the meantime, plaintiff filed a First Amended Complaint in which she restated her original claims against Roche and added two new medical malpractice claims against Dr. Smullen and the Wisconsin Patients Compensation Fund (the Fund) for negligent treatment and lack of informed consent. Roche renewed its motion, and it is now ripe for decision.

## II. ANALYSIS

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. Dismissal is warranted if the plaintiff can prove no set of facts in support of her claims that would entitle her to relief. *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir.1999); *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has

pleaded insufficient facts; it is that even assuming all of her facts are accurate, she has no legal claim. *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir.1999). Roche has asserted two grounds upon which it argues plaintiff's claims against it should be dismissed. I will address each in turn.

### A. Choice of Law

Roche's primary argument is that plaintiff's claims against it are governed by Michigan law and, under Michigan law, those claims are barred by virtue of the FDA's approval of Accutane. *See* M.C.L. § 600.2946(5); *see also Taylor v. Smithkline Beecham Corp.*, 468 Mich. 1, 658 N.W.2d 127 (2003) (upholding constitutionality of M.C.L. § 600.2946(5).) Plaintiff, on the other hand, contends that Wisconsin's law applies, and since Wisconsin has no similar law, dismissal in not warranted. The dispositive question then is: which state's law applies?

■ This case is before me pursuant to 28 U.S.C. § 1332. Federal courts sitting in diversity cases must look to the conflict-of-laws rules of the forum state for the applicable substantive law. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). I therefore turn to the law of Wisconsin to determine which law applies.

■ In Wisconsin, the first rule in choice-of-law questions is that "the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of the greater significance." *State Farm Mut. Auto. Ins. Co. v. Gillette*, 251 Wis.2d 561, 588, 641 N.W.2d 662, 672 (2002). Wisconsin courts also consider five factors in deciding which state's law to apply, although it is not entirely clear how they are to influence the determination once the "first rule" is applied. *See Hunker v. Royal Indem. Co.*, 57 Wis.2d 588, 597,

204 N.W.2d 897, 901–902 (1973). In any event, the five factors include:

(1) Predictability of results; (2) Maintenance of interstate and international order; (3) Simplification of the judicial task; (4) Advancement of the forum's governmental interests; and (5) Application of the better rule of law.

*Gillette*, 251 Wis.2d at 588–589, 641 N.W.2d at 676.

Roche argues that in this case the Michigan contacts are of far greater significance than the Wisconsin contacts and that the five choice-influencing factors favor application of Michigan law. It notes that plaintiff is a Michigan resident, as was her son at the time of his death. Her son presumably purchased the Accutane in Michigan, used it there and committed suicide in that state. The only contact with Wisconsin, Roche argues, is that the drug was prescribed by a Green Bay dermatologist, who at the time Roche first filed its motion, was not a party to the action.

But whatever merit Roche's argument may have had initially, the assertion of the medical malpractice claims against Dr. Smullen, and the addition of Dr. Smullen and the Fund as parties to the action have significantly changed the choice-of-law analysis. Dr. Smullen is a physician who is licensed by, and practices in, the State of Wisconsin. He examined and treated Bartholomew in Wisconsin, and prescribed Accutane for him in this state as well. Notwithstanding the fact that Bartholomew's death occurred in Michigan, Wisconsin has a strong interest in medical malpractice claims filed against Wisconsin doctors.

As Roche concedes, "the Wisconsin legislature enacted a comprehensive regulatory scheme (Wis.Stat. Ch. 655) to address malpractice claims, and intended the protections afforded under that scheme (including the statutory limits on liability) to be applied to *Wisconsin* health care pro-

viders." (Reply Br. at 4.) The legislature enacted Chapter 655 out of concern over the rapidly increasing number of malpractice suits and claims, the resulting detrimental effect of this litigation on the costs and quality of patient care, and the costs of liability insurance in Wisconsin. *Mortenson v. Miller*, 99 Wis.2d 209, 216–217, 298 N.W.2d 546, 550 (1980). In furtherance of the legislature's effort to provide a comprehensive solution to this problem, the act provides that "... every patient, every patient representative, and every health care provider shall be conclusively presumed to have accepted to be bound by this chapter." Wis. Stat. § 655.506(1)(a). It is therefore clear that Wisconsin law must govern plaintiff's claims against Dr. Smullen and the Fund.

Roche points out, however, that Wisconsin courts follow the principle of *depecage*, which "refers to the process of cutting up a case into individual issues, each subject to a separate choice-of-law analysis." *Ruiz v. Blentech Corp.*, 89 F.3d 320, 324 n. 1 (7th Cir.1996). In *Gillette*, for example, the court stated:

[a] law of one jurisdiction could be invoked with respect to some issues and in some fact situations and the law of another jurisdiction invoked in respect to other issues and other fact situations. This court has long recognized that "it is not necessary in each case to apply only the law of a single state to all phases of [a] lawsuit."

251 Wis.2d at 600–601 641 N.W.2d at 682, *quoting Wilcox v. Wilcox*, 26 Wis.2d 617, 631, 133 N.W.2d 408 (1965). Under the principle of *depecage*, Roche argues, the choice-of-law analysis comes out differently for the medical malpractice claims than it does for the product liability claim.

■ But the principle of depecage does not apply when the issues before the court are "inextricably intertwined." *Boomsma*

*v. Star Transp., Inc.*, 202 F.Supp.2d 869, 878 (E.D.Wis.2002). In *Boomsma*, the Wisconsin plaintiffs sought to avoid Wisconsin's cap on damages in their claims for wrongful death by applying Illinois law in a case that arose out of a traffic accident that occurred in Wisconsin, but was allegedly caused by residents of Illinois. The plaintiffs argued that Wisconsin had no interest in limiting damage awards against out-of-state defendants. The out-of-state defendants, however, had filed third party claims against other Wisconsin residents involved in the accident. The court rejected the plaintiffs' argument that under the principle of *depecage*, it should apply Illinois law to the claims against the defendants and Wisconsin law to the third party claims, stating:

> "Dépeçage" notwithstanding, the claims and third-party claims in this action are, as the defendants note, "inextricably intertwined." Applying Illinois law to the underlying claims and Wisconsin law to the third-party claims would be both unworkable and unfair. As the third-party defendants observe in their brief, "it would seem almost impossible to concomitantly protect [the third party defendants'] domiciliary rights and allow plaintiff[s] to collect Illinois-type damages," since "the percentage of causal negligence eventually attributed to the third-party defendants will be measured in dollars." For example, if the plaintiffs recover one million dollars worth of "Illinois-type damages," and the third-party defendants are adjudged 50% at fault, the third-party defendants are on the hook for half a million dollars, instead of the $75,000 maximum permitted under Wisconsin law. This would be manifestly unfair to the third-party defendants, all Wisconsin domiciliaries, who have a justified expectation of limited liability. On the other hand, if the third-party defendants are afforded the protection of Wisconsin law and their

liability is limited to $75,000, is it fair to subject the defendants, who are only 50% at fault under this hypothetical, to a judgment of $925,000? The plaintiffs have left these difficult questions unanswered. Therefore, although there would be persuasive arguments in favor of Illinois law if this case did not involve third-party claims against Wisconsin domiciliaries, the Court agrees with Judge Reynolds that the third-party claims cannot be ignored. In light of the presence of the third-party defendants, the "domiciles of the parties" factor favors the application of Wisconsin law.

202 F.Supp.2d at 878.

The same difficulty exists here. The strict liability claim against Roche is inextricably intertwined with the malpractice claim against Dr. Smullen and the Fund. The claim against Roche is that it placed an unreasonably dangerous drug on the market without adequate warnings. Dr. Smullen's alleged negligence, on the other hand, consists, at least in part, of prescribing Accutane and failing to adequately warn his patient of the possible adverse side effects. Assuming both allegations are true, which I must in deciding a motion to dismiss, then Roche and Dr. Smullen will both be liable for plaintiff's loss and will contribute to the payment of any damages that may be awarded. To dismiss Roche pursuant to Michigan law would thus result in a Wisconsin physician and the Fund shouldering the entire burden of a loss for which, according to the complaint, Roche bears substantial, if not primary, responsibility. Notwithstanding the fact that neither Dr. Smullen, nor the Fund has so far filed a cross-claim for contribution against Roche, it is apparent from the allegations of the complaint that both parties are being sued for the same loss. Under these circumstances, it would be unfair to dismiss the manufacturer of the allegedly defective drug while main-

taining the action against the doctor who prescribed it.

Application of the five choice-influencing factors confirms my conclusion that Wisconsin law should apply. The first factor, predictability of results, "deals with the parties' expectations." *Gillette*, 251 Wis.2d at 589, 641 N.W.2d at 676. This factor clearly favors Wisconsin. When plaintiff sought medical care for her son in Wisconsin with a doctor licensed by the State of Wisconsin, she had every reason to assume that any dispute concerning the quality of that care would be resolved under Wisconsin law. Certainly, that would have been the expectation of Dr. Smullen. And as the manufacturer of a product placed in the stream of commerce, Roche surely would have understood that it would be subject to suit in any state where its drug was available. It can come as no surprise that it would be required to defend itself in a forum in which resident physicians are prescribing its product.

The second factor, maintenance of interstate and international order, "requires that the jurisdiction that is minimally concerned defer to the jurisdiction that is substantially concerned." *Id.* at 589–90, 641 N.W.2d 662. As noted above, the fact that the claim against Roche is intertwined with a medical malpractice claim against a Wisconsin physician and the Fund gives Wisconsin a substantial interest in this action. While Michigan may, as a matter of public policy, have concluded that the manufacturers of drugs that have gone through the lengthy, expensive and exhaustive approval process of the FDA should not face second-guessing by non-expert jurors in personal injury lawsuits, it does not dishonor that judgment to hold that it will not be given extra-territorial effect in a Wisconsin medical malpractice action. I therefore conclude that the second factor also favors Wisconsin.

The third factor is simplification of the judicial task. Although the parties conclude that this factor is neutral, I find that it too favors the application of Wisconsin law. Applying M.C.L. § 600.2946(5), it is true, would likely result in the immediate dismissal of Roche from this action. But it is not clear what if any effect this would have on the claims against Dr. Smullen and the Fund. The enactment of M.C.L. § 600.2946(5) appears to have been part of a broader effort on the part of the Michigan legislature to reform its tort law. Among the other changes brought about by the reform effort was the elimination or substantial reduction of the operation of the common law doctrine of joint and several liability. *See* Jan C. Leventer, *Annual Survey of Michigan Law June 1, 1995—May 31, 1996*, 43 WAYNE L.Rev. 1181, 1184 (1997). Is it fair to the parties to apply one part of Michigan's tort reform and not the rest? Is it reasonable to do so? Application of M.C.L. § 600.2946(5) in the context of a Wisconsin medical malpractice action may well give rise to other issues that neither the courts of Michigan nor Wisconsin have addressed. Applying part of one state's law to one claim and part of another state's to another claim involving the same loss is bound to complicate the judicial task. I thus conclude that the third factor also favors the choice of Wisconsin law.

The fourth factor is advancement of the forum's governmental interests. Although "Wisconsin has a strong interest in compensating its residents who are the victims of torts," *Gillette*, 251 Wis.2d at 592, 641 N.W.2d at 677, plaintiff is not a resident of Wisconsin; nor was her son. But as I've already noted, Wisconsin has a strong interest in insuring that medical malpractice claims against resident physicians are fully and fairly adjudicated. That interest outweighs the interest Michigan may have in having its prohibition on suits against

FDA-approved drug manufacturers applied to New Jersey and Delaware corporate defendants whose drug was prescribed by a Wisconsin doctor who is now facing a malpractice action in Wisconsin. The fourth factor thus also favors Wisconsin.

The fifth and final factor is the application of the better rule of law. On this question, reasonable parties can and do disagree. Michigan has sided with those who argue that:

> It is unfair to deem a product defective when it conforms to applicable governmental standards. These standards are promulgated after intense public scrutiny, expert evaluation, and thorough product evaluation. Lay jurors should not be permitted to second-guess a standard that has been developed by government experts.

Mich. Senate Fiscal Agency, Bill Analysis, S.B. 344, H.B. 4508, Revised Enrolled Analysis at 11 (Jan. 11, 1996). Michigan's legislation also reflects concerns that product liability litigation has reduced the capacity of firms to compete internationally, curtailed innovation, reduced funding for research, increased consumer costs, and made casualty insurance in many areas unavailable or unaffordable. *Id.* at 1.

These concerns have had less impact in Wisconsin, at least in the area of product liability lawsuits. Wisconsin law reflects a greater concern that each individual be more fully financially compensated for losses suffered by them, as well as a high degree of confidence in the jury system to properly determine and apportion fault, and fairly assess damages. It is not for this court to say which policy better serves justice and the public interest. That determination is entrusted to the legislatures of the respective states, subject to the state and federal constitutions. But it does seem clear that the better rule of law is not half of one state's law and half of the other's. Legislatures, at their best, enact comprehensive reform of the law after thoroughly studying a problem and considering possible alternatives and ramifications. That is what Michigan attempted to do in 1995 when it enacted comprehensive tort reform legislation. I conclude that the better rule in this case will not be served by incorporating one aspect of the comprehensive reform it enacted to one part of a case that is in all other respects governed by the law of Wisconsin.

For all of these reasons, based upon consideration of the nonforum contacts, as well as the five choice-influencing factors, I conclude that the presumption that the law of the forum should apply has not been overcome. It therefore follows that Roche is not entitled to dismissal on the basis of M.C.L. § 600.2946(5).

## B. Dismissal Under Wisconsin Law

Roche alternatively argues that even if Wisconsin law is applied, plaintiff's claim must nevertheless be dismissed because "Wisconsin follows the rule that 'suicide constitutes an intervening force which breaks the line of causation from the wrongful act to the death and therefore the wrongful act does not render defendant civilly liable.'" (Brief In Support at 13, quoting *Bogust v. Iverson,* 10 Wis.2d 129, 137, 102 N.W.2d 228, 232 (1960).) Although *Bogust* itself recognizes an exception when the tortious acts of the defendant "produces a rage or frenzy or uncontrollable impulse, during which state self-destruction takes place," *Id.* at 137, 102 N.W.2d 228, Roche argues there are no allegations in the complaint sufficient to bring it within this limited exception.

■ I disagree. Plaintiff has alleged a causal connection between Batholomew's ingestion of Accutane and his death. She alleged that in May of 2000, the defendants themselves began warning that "Accutane

can cause depression, psychosis, and rarely suicide ideation, suicide attempts and suicide." (1st Am.Compl.¶ 38.) And with respect to her son's death, she specifically alleges that "[o]n May 14, 2000, plaintiff's decedent, without obvious sign or symptom of psychiatric distress, with an uncontrollable impulse and without conscious volition, committed suicide." (*Id.* ¶ 45.) These allegations are sufficient to raise a question of fact as to whether the exception recognized in Wisconsin law applies.

The issue of cause in this case, as in all cases, is one of fact on which plaintiff bears the burden of proof. The fact that plaintiff's decedent took his own life does not rule out the possibility that the conduct of the defendants was a substantial factor in causing his death:

> While the act of suicide may be an independent intervening cause in some cases, it is certainly not so in those cases where the incontrovertible evidence shows that, without the injury, there would have been no suicide; that the suicide was merely an act, not a cause, intervening between the injury and the death, and that it was part of an unbroken chain of events from the injury to the death.

*Brenne v. DILHR*, 38 Wis.2d 84, 94, 156 N.W.2d 497, 501 (1968).

Plaintiff has alleged that her son's suicide was the result of "an uncontrollable impulse without conscious volition" that was itself caused by the conduct of the defendants. At this stage, that is enough to proceed. I conclude that plaintiff has alleged facts sufficient to state a claim for relief under Wisconsin law. Roche's motion to dismiss must therefore be denied.

**IT IS THEREFORE ORDERED** that Roche's motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) is **DENIED.**