MAUD L. HOWARD, ADMINISTRATRIX, v. R. H. WRIGHT.

(Filed 11 April, 1917.)

**1. Master and Servant—Negligence—Assumption of Risks.**

The defense of assumption of risk is one growing out of the contract of employment and extends only to the ordinary risks naturally and usually incident to the work that the employee has undertaken to perform, and does not include risks and dangers incident to a failure on the part of the employer to perform his own nondelegable duties.

**2. Same—Issues—Instructions—Appeal and Error—Harmless Error.**

Where the issues are presented in an action for damages against an employer for failing to provide his employee a safe place to work in the performance of his duties, as to negligence, contributory negligence, and assumption of risk, the defense of assumption of risk is referable to the issue as to contributory negligence, and where the judge has properly charged the jury on that issue, it will not be held for reversible error that he failed to charge them upon the issue as to assumption of risks.

**3. Master and Servant—Dangerous Employment—Nondelegable Duties.**

The owner, who is employing his workmen, under the superintendence of another, to build his dwelling, may not escape liability for damages caused by the negligent failure of his superintendent to provide a safe scaffold for his employees to work on, as such duty may not be delegated to another to perform and escape such liability.

**4. Negligence—Master and Servant—Personal Injury—Declarations—Weight of Evidence—Physicians.**

In an action to recover damages for the negligent killing of plaintiff's intestate while engaged in the defendant's employment, declarations made by the intestate as to his physical condition with relation to the injury complained of, to the witness, though not a physician, are competent, the fact that the witness was not a physician going only to the weight to be given his testimony by the jury; the requisite being that such declarations must not be narrative in form, either as to a past condition or the cause of it.

**5. Appeal and Error—Conflict—Record—Objections and Exceptions—Questions and Answers.**

On appeal, the record will control in case of conflict, as to whether the answer to a question by a witness at the trial was excepted to as well as the question asked him; and where the answer is only incompetent in part, an exception to the whole thereof will not be considered.

CIVIL ACTION to recover damages for death of plaintiff's intestate, caused by alleged negligence of defendant's employees, tried before *Daniels, J.,* and a jury, at November Term, 1916, of DURHAM.

There was evidence on part of plaintiff tending to show that in the fall of 1915 defendant was having a dwelling-house built in said county

by his own employees and under the supervision and direction of W. C. Gibson. That on 10 September, 1915, intestate, one of the employees, while engaged in said employment, fell from a scaffold or platform prepared for carrying on the work and received severe physical injuries, from which he subsequently died. That the platform, erected under the supervision of the said foreman, was improperly constructed and made of improper and inferior material, "common knotty stuff," and while intestate was on same in course of his duty a weak plank broke, throwing intestate to the ground, causing injuries as stated.

On denial of liability, there was evidence on part of defendant tending to show that intestate was an alert, capable, experienced man, who had every opportunity to observe and note the conditions of the platform and the material of which it was made. There was evidence to the effect, further, that intestate did not die of his injuries, as claimed by plaintiff, but that his death was the result of typhoid fever, subsequently contracted.

On issues submitted, the jury rendered the following verdict:

1. Was the death of plaintiff's intestate, L. A. Howard, caused by the negligence of the defendant, as alleged in the complaint? Answer: "Yes."

2. Did the plaintiff's intestate, L. A. Howard, by his own negligence, contribute to his injuries, as alleged in the answer? Answer: "No."

3. Did the plaintiff's intestate, L. A. Howard, assume the risk and danger incident to his employment, as alleged in the answer? Answer: "No."

4. What damages, if any, is the plaintiff entitled to recover? Answer: "$5,000."

Judgment, and defendant excepted and appealed.

*Brawley & Gantt for plaintiff.*
*Fuller, Reade & Fuller for defendant.*

HOKE, J. There was ample evidence of negligence in respect to the platform, both as to the material of which it was made and the manner in which it was built, two of the witnesses testifying that when it was being put up one of the employees said to the foreman: "You are fixing a trap there to throw men down and break their necks,' and the foreman replied: "Let the men look where they walk, and if they fall the ground will catch them." Defendant, however, contends that there was error in the proceedings below as to the assumption of risk on the part of the intestate, in that his Honor did not lay down any rule of law to guide the jury in the determination of that issue, but only stated the

differing positions of the parties in reference to it. The statements of his Honor on these questions were so full and direct that we might well hold the jury were sufficiently instructed on the issue, but if it be conceded that this objection to the charge is well taken, it could not be held for reversible error on this record. Under the rule prevailing in this jurisdiction, the defense of assumption of risk is one growing out of the contract of employment, and extends only to the ordinary risks naturally and usually incident to the work that an employee has undertaken to perform. It does not include risks and dangers incident to a failure on the part of the employer to perform his own nondelegable duties. These are usually considered as extraordinary risks, which an employee does not assume and which are not available as a defense unless they are of such kind and character as to render an employee guilty of contributory negligence who knowingly continues to work on under the conditions they present. This position has been repeatedly approved in our decisions and may be taken as the established rule for the trial of causes controlled by the principles prevailing in this jurisdiction. *Yarborough v. Geer,* 171 N. C., 335; *Norris v. Holt-Morgan Mills,* 154 N. C., pp. 474-485; *Pressly v. Yarn Mills,* 138 N. C., 410; *Marks v. Cotton Mills,* 138 N. C., 401; *Hicks v. Mfg. Co.,* 138 N. C., pp. 319-327.

In *Yarborough's case* it was held: "The rule that the servant assumes the risk of incident to the nature of a dangerous employment has no application to injuries directly resulting from the negligence of the master in failing in his duty to furnish him a safe place to work, or that of another to whom the master had delegated this duty."

In *Norris' case* it was said: "The charge to the jury was, we think, in some respects more favorable to the defendant than it was entitled to, and particularly as to the doctrine of assumption of risk, as the employee never assumes the risk of an injury caused by the failure of the employer to perform a duty which he cannot delegate, and the duty to provide a reasonably safe place to work in is one of them."

In *Pressly v. Yarn Mill, supra,* it was held: "While an employee assumes all the ordinary risks incident to his employment, he does not assume the risk of defective appliances due to his employer's negligence, unless such defect is obvious and so immediately dangerous that no prudent man would continue to work on and incur the attendant risks."

And in *Hicks v. Mfg. Co.* it was said: "To have such effect, that is, to bring the knowledge of such observed conditions of increased hazard imputable to the master's negligence into the class of ordinary risks which the employee is said to assume, the danger must be obvious and so imminent that no man of ordinary prudence, and acting with such

prudence, would incur the risk which the conditions disclose," citing Labatt on Master and Servant, secs. 279a, 296, 297, 298, 298a; Beach on Contr. Neg., sec. 361; *Sims v. Lindsay,* 122 N. C., 678; *Lloyd v. Hanes,* 126 N. C., 359; *Patterson v. Pittsburg,* 76 Pa. St., 389; *Kane v. R. R.,* 128 U. S., 95."

It will thus be seen that the conduct of an employee, in working on in the presence of dangerous conditions caused by breaches of non-delegable duties on the part of the employer, the present case being one of them, is referred by our law to the principles of contributory negligence, and the question, in this aspect of the matter, having been determined against defendant on a separate issue, the second, and under a charge free from any valid exception, there has no harm come to defendant in the alleged failure to charge more definitely on the third issue as to the assumption of risk.

It was further objected that in the evidence of the administratrix, testifying as to the effect of the fall on her husband and his condition following it, the plaintiff was allowed to ask witness as to the husband's declarations, the objection and the form in which presented and the answer to it appearing in the record as follows: the witness testifying, as stated, among other things, said: "He always went bent with his stick—never was straight again like he was before. He had a cough; he would cough real often; he would cough often during the day and night, and always spit up blood in what he spit, and called my attention to that. He continued to cough from the time he fell until he died. I never noticed him ever coughing before he was injured."

Question: "State what your husband said, if anything, about his condition as to his suffering."

Objection in apt time by defendant, as declaration of a dead man is not competent. Objection overruled, the court saying: "I guess the declaration of a patient when sick is competent."

Exception by defendant.

"He said he was hurt, and he believed he was hurt inside somewhere, because he always hurt there, and he said it was going to kill him; he would never get over it. He showed me the back of his head, neck, and breast where it hurt him. He was 35 years old in November. He died December 6th, a few days after his birthday. Some of the blood he vomited was thin and some thick—seemed to be clotty. He vomited about a small cupful on two occasions—one the afternoon of the injury and the other the following night."

It is very generally held that when the physical condition of a person is the subject of inquiry, his declarations as to his present health, the condition of his body, suffering and pain, etc., are admissible in evidence.

Some of the courts elsewhere, and especially in the later decisions, have shown a disposition to restrict the reception of such testimony, but others are more liberal in reference to it, our own Court being among them. All of the cases here and elsewhere hold that such declarations must not be narrative in their nature, either as to a past condition or the cause of it. *Lush v. McDaniel,* 35 N. C., 485; Jones on Evidence, p. 345. But when, as stated, a man's physical or mental condition is a circumstance involved in the issue, his declarations, having a reasonable tendency to show his present health, condition, etc., will be received as pertinent evidence, and, when admissible on this ground and for this purpose, the fact, the mere fact that they may be self-serving or that they are made *post litem motam* or that the declarant may or may not be dead, will not affect the principle. *S. v. Harris,* 63 N. C., 1; *Biles v. Holmes,* 33 N. C., 16; *Quaife v. Chicago, N. W., etc., R. R.,* 48 Wis., 513, reported also in 33 Am. Rep., 821; *Central R. R. v. Smith* 76 Ga., 219; *Bagley v. Mason,* 69 Vt., 175; *Northern Pacific Ry. v. Urlin,* 168 U. S., 271; *Keyes v. City Falls,* 107 Iowa, 509; *Indiana R. R. v. Maurer,* 160 Ind., 25; 15 A. & E. (2d Ed.), 315; 4 Chamberlain Modern Law Ev., secs. 2627-2635; 1 Elliott on Evidence, sec. 523 *et seq.* When declarations of this kind are self-serving they have been rejected altogether in one or two jurisdictions. In others, they are admitted only when made to a physician consulted about the case. This is said to be the rule in Massachusetts. But while in the instance of self-serving declarations a judge may properly admonish a jury that the declarations should be received with cautious scrutiny, our cases hold that the considerations suggested only go to the weight of the evidence and not to its competency, and that the declarations must be submitted to the jury. In *S. v. Harris, supra,* a declaration of deceased as to existence of a burn on the abdomen, *Reade, J.,* delivering the opinion, said: "The declarations of the deceased as to the condition of his body and health at the time when the declarations were made fall under the head of natural evidence. Such declarations are admissible in the very nature of things. No physician would undertake to prescribe for a patient without inquiry of him how he felt, where were his pains, and the like. What weight the physician will give to the patient's declarations must be for his consideration, and so what weight the jury will give is for their consideration." And in *Biles v. Holmes* declarations of a slave as to his having headache and his inability to work, Pearson, J., for the Court, said: "The object of the plaintiff was to show the condition of his slave, that he had not recovered from the effect of the blow and was permanently injured. For this purpose it was competent to prove how he acted, how he looked, and of what he

complained. In fact, this is almost the only kind of evidence by which the condition of body or mind can be ascertained; it is natural evidence or the evidence of facts, as distinguished from personal evidence or the testimony of witnesses. Best on the Principles of of Evidence.

"The declarations of a patient to his physician are strong evidence of the state of his health, and only differ from his declarations to a third person because it is less probable that he will feign or state falsehoods to one by whom he hopes to be relieved; but this consideration only agects the degree of credit due to such declarations and does not affect their admissibility. Whether expresions of pain are real or feigned must be determined by the jury. 1 Greenleaf Ev., 126.

"If it be material to ascertain the mental condition of an individual, his conversation at different times is admissible. Upon the same ground, it being material to ascertain the bodily condition of the slave, his complaints of headache when exposed to the sun, and his declarations that he was unable to work in the sun or to endure hard labor, are admissible. True, one may feign the language of a madman or may utter false complaints of pain, but the law does not on this account exclude what may be the only mode of proof. It is left to the good sense of the jury, connecting the declarations with the acts and looks of the party and other circumstances, to say how far such evidence is to be relied on."

In *Northern Pacific v. Urlin, supra, Associate Justice Shiras,* delivering the opinion, quotes with approval from Greenleaf·on Evidence as follows: "Whenever the bodily or mental feelings of an individual are material to be proved, the usual expressions of such feelings, made at the time in question, are also original evidence. If they were the natural language of the affection, whether of body or mind, they furnish satisfactory evidence, and often the only proof of its existence, and whether they were real or feigned is for the jury to determine. So, also, the representations by a sick person of the nature, symptoms, and effects of the malady under which he is suffering at the time are original evidence. If made to a medical attendant, they are of greater weight as evidence, but if made to any other person they are not on that account rejected. Greenleaf Ev. (14th Ed.), sec. 102."

A very correct and inclusive statement as to declarations of this kind, deducible from the better considered decisions on the subject, is contained in a note to *Quaife v. R. R.,* 33 Am. Reports at page 829, as follows: "The conclusion, therefore, is: (1) That the complaints and statements of the.injured party at the very time of the occurrence, not only as to bodily suffering but as to the circumstances of the occurrence, are admissible as *res gestæ.* (2) That the statements of the injured

HOWARD *v.* WRIGHT.

party subsequently and not substantially at the time of the occurrence, as to the circumstances of the occurrence, are not admissible, whether made to a physician or to a nonexpert. (3) Complaints and statements of the injured party as to his present physical condition, although subsequently to the occurrence and indeed after suit is brought for the injuries, are admissible, whether made to a physician or to one who is not an expert."

In some courts, too, it is held that when the declarant is alive, the statutes enabling a party to testify should have the effect of precluding the admissions of such declarations, but this is said by an intelligent writer on the law of evidence to be against the weight of authority. 1 Elliott, sec. 526, citing many authorities in support of his view and quoting more especially from *Board, etc. v. Leggett,* 115 Ind., pp. 544-47-48.

Applying the principle of these cases, the question certainly was competent, and this was all that the record shows was objected to. Much of the answer is properly responsive and also admissible; we are inclined to the opinion that all of it is so, for the declaration that the hurt was going to kill him and he would never get over it, when considered in reference to the entire answer and the attendant circumstances, may be very properly interpreted as only and in effect a declaration as to the character and intensity of his pain or hurt. But even if this particular part of the answer should be held incompetent as giving the inference of the witness, there was no objection made to it on that ground, and no motion to strike it out, and the objection being to the entire answer, part of which was competent, it would be necessarily overruled. *Goins v. Indian Training School,* 169 N. C., 736; *Carmichael v. Tel. Co.,* 162 N. C., 333; *Smathers v. Hotel Co.,* 167 N. C., 469; *S. v. Ledford,* 133 N. C., 722; *Ricks v. Woodard,* 159 N. C., pp. 647-650. In fact, as heretofore stated, the objection as disclosed by the record was only to the question, which was| entirely proper, and only the assignment of error making objection to the answer. It is well understood that in case of conflict the record will prevail. *McDonald v. McLendon, ante,* p. 172.

We find no error in the trial, and the judgment in plaintiff's favor must be affirmed.

No error.