MARY THOMPSON, WIDOW & GUARDIAN AD LITEM OF TORI ANN THOMPSON AND TRACY THOMPSON, MINOR CHILDREN; A.W. HUFFMAN, JR., ADMINISTRATOR OF THE ESTATE OF JOHN H. THOMPSON, DECEASED, EMPLOYEE, PLAINTIFFS v. LENOIR TRANSFER COMPANY, EMPLOYER; AND AETNA INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 7910IC1060

(Filed 5 August 1980)

1. **Master and Servant § 64.1; Evidence § 34.6– workers' compensation – death benefits – suicide – pain and depression from work-related injury**
    In an action to recover workers' compensation benefits for the death of an employee from an overdose of pain medicine prescribed in the treatment of injuries received by the employee in a work-related automobile accident, the hearing commissioner erred in the exclusion of evidence of the physical and mental condition of the deceased employee after the accident since (1) the evidence was relevant to plaintiffs' theory that pain and depression from the work-related injuries caused the deceased to commit suicide and (2) the evidence was admissible under the exception to the hearsay rule for a person's statement as to then-existing pain and other physical discomfort.

2. **Master and Servant § 64.1– workers' compensation – suicide – whether act was willful – pain and depression from work-related injury**

The Industrial Commission erred in denying workers' compensation benefits for the death of an employee from suicide by an overdose of pain medicine prescribed in the treatment of injuries received by the employee in a work-related automobile accident on the ground that there was "no evidence that his mental condition was affected to such an extent that he was not conscious of his actions or that the proximate cause of his suicide was his injuries," since an employee who becomes devoid of normal judgment and dominated by a disturbance of mind directly caused by his injury and its consequences and commits suicide as a result thereof does not act willfully within the meaning of G.S. 97-12(3). Therefore, where there was competent evidence that deceased took his own life because he could not withstand either the pain or depression and because there was no hope of recovery, the cause is remanded for proper findings and conclusions by the Industrial Commission.

APPEAL by plaintiffs from Order of North Carolina Industrial Commission entered 29 November 1978. Heard in the Court of Appeals 24 April 1980.

The appellant is the widow and administratrix of the estate of the deceased-employee, John H. Thompson. The appellant seeks to recover, *inter alia*, death benefits under the Workers' Compensation Act, N.C. Gen. Stat. § 97-38.

It is undisputed that on 26 January 1976, the deceased-employee suffered an injury to his left femur, pelvis, and right tibia and fibula as a result of an automobile accident; that at the time of said injury an employment relationship existed between the deceased-employee and defendant-employer, Lenoir Transfer Company; and that defendant Aetna Insurance Company was the compensation carrier on the risk. It is also undisputed that the deceased-employee died on 22 December 1976 as a result of an overdose of pain medicine which had been prescribed by Dr. Paul E. Brown, an orthopedic medical doctor who treated the decedent's medical injuries.

The matter was heard by Commissioner Forrest H. Shuford, II, Chief Deputy Commissioner, in Hickory, North Carolina, on 21 June 1978. Additional testimony was received in Lenoir on 16 October 1978. The critical Findings of Fact and Conclusions of Law made by Commissioner Shuford were as follows:

### "FINDINGS OF FACT

*   *   *   *

5. Between the time of his accident and the date of his death on 22 December 1976, deceased employee became quite depressed and dejected. Prior to the accident he had appeared to be a well-adjusted, active and fun-loving person. Following the accident he became more and more depressed and dejected as time went by. He suffered with pain in his legs and was given strong pain medication by Dr. Brown and was also prescribed Valium. During the night of 21-22 December 1976 deceased employee took an overdose of drugs and died as a result of multiple toxicity. While the death of deceased employee was contributed to by his accident and the after effects of the accident, the death was a result of his willful intention to kill himself.

*   *   *   *

With respect to the death of deceased employee being a result of the accident, whereas it appears that the deceased employee was depressed and dejected and suffering from pain, there is absolutely no evidence that his mental condition was affected to such an extent that he was not conscious of his actions or that the proximate cause of his suicide was his injuries.

*   *   *   *

It is specifically found as a fact that the death was a result of the willful intention of deceased to kill himself and that the suicide of deceased employee was not a proximate result of his injury by accident.

*   *   *   *

In practically every case severe injuries cause depression and despondency on the part of the injured or ill employee. It is the opinion of the undersigned that it must be shown that such despondency and depression of the employee was

sufficient to cause the suicide in order for the prohibition in G.S. 97-12(3) concerning intentional death to be overcome.

\*    \*    \*    \*

## CONCLUSIONS OF LAW

\*    \*    \*    \*

3. The death of the deceased employee was a result of the willful intention of the deceased employee to kill himself and no death benefits are thus payable. G.S. 97-12."

Upon review by the Full Commission, the Full Commission affirmed and adopted the Opinion and Award filed by Chief Deputy Commissioner Shuford.

Other necessary facts are stated in the opinion.

*Wilson, Palmer & Cannon by Hugh M. Wilson and David T. Flaherty, Jr., for plaintiff appellants.*

*DuMont, McLean, Leake & Harrell by Larry Leake for defendant appellees.*

CLARK, Judge.

We note at the outset that defendants have attempted to place their own exceptions in the record without formally including cross-assignments of error in the record as required by Appellate Rule 10(c)-(d). We therefore decline to consider these exceptions.

[1] The first issue presented in this case is whether the Hearing Commissioner erred in refusing to admit some evidence of the physical and mental condition of the deceased employee. Without setting out each excluded item, we hold that it was error to exclude such evidence of decedent's suffering. First, the evidence is relevant because appellants' theory is that the work-related injury caused the deceased such pain and depression that the deceased was caused to commit suicide. Even

though pain and suffering are not compensable under our Workers' Compensation Act, *Branham v. Denny Roll & Panel Co.*, 223 N.C. 233, 236, 25 S.E. 2d 865, 867 (1943), and even though N.C. Gen. Stat. § 97-12(3) specifically forbids recovery under our Act where an individual has intentionally killed himself, the appellants' theory is nonetheless one which is cognizable by our Courts. As stated by Justice Sharp (later Chief Justice):

> "To say, as a matter of law, that one who intentionally takes his own life acts willfully is to ignore 'the role which pain or despair may play in breaking down a rational, mental process.' *Harper v. Industrial Commission*, 24 Ill. 2d 103, 107, 180 N.E. 2d 480, 482. Annot., 15 A.L.R. 3d 616, 622. 'If the sole motivation controlling the will of the employee when he knowingly decides to kill himself is the pain and despair caused by the injury, and if the will itself is deranged and disordered by these consequences of the injury, then it seems wrong to say that this exercise of will is "independent," or that it breaks the chain of causation. Rather, it seems to be in the direct line of causation.' 1A Larson's Workmen's Compensation Law § 36.30 (1967); Annot., 15 A.L.R. 3d 616, 622. As Fowler, J., pointed out in his dissent in *Barbour v. Industrial Commission*, 241 Wis. 462, 6 N.W. 2d 199 (1942) (a decision which applied *Sponatski*), when suicide is the 'end result' of an injury sustained in a compensable accident, it is 'an intervening act but not an intervening cause ... .' "

*Petty v. Associated Transport, Inc.*, 276 N.C. 417, 426, 173 S.E. 2d 321, 328 (1970). *Petty* made it clear that mental derangement may be caused by the consequences of the injury, including pain and despair, as well as by the injury itself. In *Petty* the Court also emphasized that the evidence in that case tended to show that Petty's death was a result of the "agitated depression" resulting from the accident and the Court rejected the Commissioner's finding that there was no causal relation between the accident and death.

Second, even though much of the proffered testimony was hearsay, most of the testimony would come within the well-recognized exception for a person's statement as to then-

existing pain and other physical discomfort. 1 Stansbury's N.C. Evidence § 161 (Brandis rev. 1973). Moreover, regardless of whether such evidence is deemed to be an exception to the hearsay rule, "[i]t is very generally held that when the physical condition of a person is the subject of inquiry, his declarations as to his present health, condition of his body, suffering and pain, etc. are admissible in evidence." *Howard v. Wright,* 173 N.C. 339, 342, 91 S.E. 1032, 1033 (1917); *Munden v. Metropolitan Life Insurance Co.,* 213 N.C. 504, 506, 196 S.E. 872, 874 (1938).

As a general rule, "[t]he burden is on the appellant not only to show error, but that the alleged error was prejudicial and amounted to the denial of some substantial right," 1 Strong's N.C. Index 3d *Appeal and Error* § 46.1 (1976), and the "exclusion of evidence, including the testimony of witnesses, cannot be held prejudicial when the record fails to show what evidence would have been introduced or what testimony would have been given by the witness." 1 Strong's N.C. Index 3d *Appeal and Error* § 49.1 (1976). In the instant case, however, we cannot say that plaintiff has failed to show prejudicial error because in several instances the proffered testimony does appear in the record. Of particular importance is the testimony of Dr. Brown, in answer to a hypothetical question, that the pain and despair experienced by decedent as a result of the accident could be a cause of his suicide. The doctor's conclusion was allowed into evidence by the Commissioner on the condition that competent evidence was presented to support the hypothetical question submitted to the doctor, and it is not clear whether this conditional evidence was considered by the Commissioner.

[2] Even considering the evidence which was allowed in evidence, it was error for the Commissioner to conclude that "there is absolutely no evidence that his mental condition was affected to such an extent that he was not conscious of his actions or that the proximate cause of his suicide was his injuries." First, the *Petty* case explicitly rejected the requirement that the mere "fact that a workman knew that he was inflicting upon himself a mortal wound will, in all cases, amount to a 'willful intention' to kill himself, within the meaning of the statute." 276 N.C. at 427, 173 S.E. 2d at 328 (quoting from the Supreme Court of Florida.) The focus is not on whether the

Thompson v. Transfer Co.

decedent was conscious of his act but whether because of his injuries he was "devoid of normal judgment and dominated by a disturbance of mind directly caused by his injury and its consequences." *Id.* The "issue turns not on the employee's knowledge that he is killing himself, but rather on the existence of an unbroken chain of causation from the injury to the suicide." 1A Larson's, Workmen's Compensation Law § 36.30 at 6-136. As further explained by Professor Larson:

"In one of the pioneering American statements of this position, Judge Fowler, dissenting in the *Barbour* case, argued along lines, which have always been considered sound proximate cause doctrine, that if the first cause produces the second cause, that second cause is not an independent, intervening cause. The question whether the actor appreciated the consequences of his act should not be decisive on the fundamental question whether that act was a natural and foreseeable result of the first injury. To say that it was not such a result, one must take the position that it is unforeseeable that a man, in unbearable pain, will knowingly take his own life. That position is simply untenable, and if any evidence is needed, the number of compensation cases presenting these facts should be proof enough."

*Larson, supra,* § 36.30 at 6-136, –137. Much of this same language was quoted in *Petty, supra,* 276 N.C. at 426, 173 S.E. 2d at 328.

Second, it is one thing for the Commissioner to reject evidence as being incredible, but it is another to say the evidence does not exist *at all. See, e.g., Petty, supra,* 276 N.C. at 429, 173 S.E. 2d at 330, where Justice Sharp noted that the absolute nature of the Commissioner's finding in that case ignored certain conflicting statements in the testimony of several witnesses. Similarly, in the instant case we find a considerable amount of properly admissible evidence which would tend to indicate that the decedent took his life because he could not bear to withstand either the pain or the depression and because there was no hope of recovery:

1. Dr. Brown, the orthopedic medical doctor who treated the decedent, testified that the decedent complained of "continuing electric shock-type burning in his left leg;" that he prescribed the strongest medicine for pain other than narcotics which could be prescribed; that he prescribed the maximum dosages for each type of medication decedent was given; that on 6 December 1976, the last time the doctor saw decedent, and almost a year after the injury occurred, the decedent said he was continuing to have the pain; that on 6 December 1976, the doctor observed a depression about decedent's condition; and, (as conditional evidence) that the severe pain and depression could have contributed to decedent's death.

2. Mary Thompson, decedent's wife, testified that decedent's "general mental outlook was very bad;" that he could not sleep; that he was despondent; that she had to give him baths and help him go to the bathroom; that such dependency "embarrassed" him, "bothered" him, "worried" him, and kept him hoping that he would improve; that he grew more despondent each month, each week, and each day; that he wanted to know when he would begin to see any hope of getting better; and that on the night of his death he was "in real bad pain."

3. Stanley Wilson testified that prior to his accident, decedent was very lively and very active, but that after the accident Wilson detected a change in decedent's physical and mental condition; that he was more depressed than he had ever seen him before; and that decedent, while in tears, expressed to Wilson that he could hardly stand the pain.

4. Jerry Barlow testified that prior to the accident the decedent's general physical health, demeanor, disposition and mental outlook were good; that Barlow noticed a change in decedent's mental outlook and disposition after the accident; and, (upon objection improperly sustained) that decedent was down in the dumps, depressed, and "counting to find out," when decedent asked Dr. Brown if the doctor could take decedent's leg off to stop the pain and the doctor responded negatively.

5. Patsy Huffman testified that decedent, prior to the accident, was fun-loving, very sports-minded, loved life, loved his

Thompson v. Transfer Co.

family, loved his job, and was very well adjusted, but that after the accident he talked of the severity of his pain and talked about it all of the time.

6. Al Huffman testified that decedent told him, in reference to decedent's pain: "It makes me climb the walls. Without medication, I cannot sleep. I can't function" (motion to strike improperly granted). Huffman also testified that decedent later stated: "I don't know whether the pain is worth it; I don't know if I can stand it any longer" (objection properly sustained for leading question).

7. Walter Estes testified that before the accident decedent was happy-go-lucky and that he loved to live, but that decedent was crying when Estes saw decedent after the accident, and that decedent got more and more depressed as time went on.

8. A.W. Huffman, Jr., testified that decedent told him "the pain was so severe that if he had a gun he would just blow his brains out" (objection improperly sustained).

As we read *Petty*, if the Hearing Commissioner were to find the above-stated facts as true, and in the absence of any other evidence as to any other intervening cause, the decedent's wife would be entitled to recover death benefits under N.C. Gen. Stat. § 97-38.

Notwithstanding the fact that the Hearing Commissioner cited the *Petty* case, "[i]t is clear that this proceeding has been heard and reviewed under a misapprehension of the applicable principle[s] of law." 276 N.C. at 429, 173 S.E. 2d at 330. The opinion and award of the Commission is vacated and the cause is remanded to the Industrial Commission for a rehearing to: (1) determine the admissibility of Dr. Brown's answer to the hypothetical question propounded by counsel for plaintiff, and, if the answer is admissible, to properly consider such testimony; (2) to consider testimony of lay witnesses concerning decedent's pain and depression which tend to establish a direct causal relation between the accident and the suicide; and (3) to make appropriate additional findings of fact and awards as may be consistent with this opinion and the facts found upon remand.

Vacated and Remanded.

Judges VAUGHN and MARTIN (Harry C.) concur.